Filed 7/16/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MICHAEL MAY, et al., | H038338 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 111CV214518) |
| v. | |
| CITY OF MILPITAS, et al., | |
| Defendants and Respondents; | |
| SCS DEVELOPMENT CO., et al., | |
| Real Parties in Interest and Respondents. | |

This case concerns Resolution No. 8132 (Resolution) adopted by respondent City Council of the City of Milpitas (City Council). The Resolution approved amendments to a site development permit, a tentative map, and a conditional use permit for the Citation Residential Project to allow the development of 732 condominium units. After the adoption of the Resolution, respondent City of Milpitas (City) filed a notice of exemption (NOE). Appellants Michael May and Carpenters' Local Union No. 405 sought to challenge the approvals on the ground that an environmental impact report (EIR) was not prepared in compliance with the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).[1] Respondents demurred on the ground that the statute

---

[1] All further statutory references are to the Public Resources Code unless otherwise stated. The administrative regulations implementing CEQA, which are authorized by

of limitations established by Government Code section 65457 had expired. The trial court sustained the demurrer without leave to amend. On appeal, appellants challenge that order.

We conclude that the trial court's order sustaining the demurrer was proper since appellants' allegations and judicially noticed documents show that the CEQA challenge is necessarily time-barred under Government Code section 65457. Accordingly, we affirm the judgment.

I

*Procedural History*

On December 7, 2011, appellants filed a verified petition for a peremptory writ of mandate and complaint for declaratory and injunctive relief (petition) against the City and its City Council. The petition seeks to set aside the City Council's November 1, 2011 Resolution approving Site Development Permit Amendment SA11-0005, Major Tentative Map Amendment No. TM11-0001, and Conditional Use Permit Amendment No. UA11-0008 for the Citation Residential Project ("Project"). The petition challenges the determination that the changes to the Project were exempt from CEQA review.

The petition includes the following allegations. On June 3, 2008, the City certified a programmatic EIR for the Transit Area Specific Plan ("TASP"). "The TASP EIR expressly references the contamination at both the North American Transformer site and the Jones Chemical site, and noted the need for future analysis and mitigation." "The TASP EIR does not discuss or analyze shallow soil vapor data collected at the 1200 Piper

---

section 21083, are set forth in the Code of Regulations, title 14, section 15000 et seq. All references to CEQA Guidelines are to those administrative regulations. "In interpreting CEQA, we accord the CEQA Guidelines great weight except where they are clearly unauthorized or erroneous. (*Citizens of Goleta Valley v. Board of Supervisors* (1990) 52 Cal.3d 553, 564, fn. 3 . . . .)" (*Muzzy Ranch Co. v. Solano County Airport Land Use Com'n* (2007) 41 Cal.4th 372, 380, fn. 2.)

2

site" or "discuss or evaluate any impacts associated with the presence of TCE [toxic chemicals tricloroethylene] or PCE [perchloroethylene]" at the site. The TASP EIR does not apply any of the Bay Area Air Quality Management District's screening criteria or significance thresholds for greenhouse gases. "The TASP EIR does not discuss or analyze the extent of the Specific Plan's or any particular development project's ROG [reactive organic gases] emissions as compared to [the district's] new screening criteria and thresholds for ROGs adopted in 2010" or "discuss or analyze the Project's emission of ROGs and the availability of mitigations to address those project specific impacts." "The TASP EIR does not discuss or analyze the potential impacts of toxic air contaminants on workers and future residents of the Project site." "The TASP EIR requires each new project applicant to conduct a vibration impact analysis for sites adjacent to or within 300 feet of active rail line or BART alignments [and] anticipates that the City would require mitigation measures to reduce vibration to acceptable levels."

The petition states that new information of substantial importance on these matters has "come to light since the City's adoption of the TASP EIR." It alleges that City erred in relying on CEQA Guidelines section 15168, subdivision (c)(2), to exempt the project from CEQA. It also asserts that the City may not invoke the exemption from CEQA described by CEQA Guidelines section 15061, subdivision (b)(3).

The petition avers: "Where, as here, a specific plan EIR has admitted significant unmitigated environmental impacts, then later phases of the project require supplemental environmental impact reports to determine if any feasible mitigation measures can be imposed to reduce the impact." It charges that the City was claiming, based on CEQA Guidelines section 15168, subdivision (c)(2), that "the Project is 'exempt' entirely from CEQA based on a conclusion that the Project was previously analyzed under the TASP EIR" and was "ignoring the fact that Project-specific hazardous contamination, air quality issues and traffic issues were not analyzed in the 2008 TASP EIR and new significant

3

information . . . has arisen since the certification of that EIR, factors which require preparation of an Initial Study and [a] supplemental CEQA document . . . ."

Appellants' petition requests, among other relief, a peremptory writ of mandate directing respondents to set aside the project approval, the notice of exemption, and other approvals or grants related to the project "unless and until" they have "prepared, circulated, and considered a legally adequate CEQA document" and to prepare and circulate an EIR for the project.

Respondents City and City Council and the real parties in interest[2] demurred on the ground that the action was time-barred under Government Code section 65457, subdivision (b), and CEQA Guidelines section 15182. In their supporting memorandum, they argued that the CEQA challenge was subject to the 30-day statute of limitations that commenced from the date of approval under Government Code section 65457, subdivision (b).

Appellants opposed the demurrer, arguing that the action was not untimely. They maintained that, since the City's NOE relied upon CEQA Guidelines sections 15168, subdivision (c)(2), and 15061, subdivision (b)(3), their petition was subjection to a 35-day statute of limitation under section 21167, subdivision (d), and CEQA Guidelines sections 15112, subdivision (c)(2), and 15062.

Appellants asked the trial court to take judicial notice of certain documents, including but not limited to the City Council's Resolution adopted on November 1, 2011 and the City's NOE, dated November 3, 2011.

---

[2] The named real parties in interest are SCS Development Co., Citation Homes, Inc., Michael Sullivan, who is alleged to be the Director of Land Acquisition and Development for the foregoing real parties in interest, and Citation Homes Central, which is alleged to be "an owner or subdivider of the property on which the Project is proposed to be constructed and the recipient of approvals related to the Project."

4

The City Council's Resolution expressly stated that the approvals were for the Citation Residential Project to allow development of 732 condominium units located at 1200 Piper Drive. The Resolution determined that the project was exempt pursuant to CEQA Guidelines section 15168, subdivision (c)(2), because "the project is consistent with the certified EIR for Transit Area Specific Plan adopted on June 3, 2008 by the City Council." The City Council's Resolution additionally determined that the project was exempt pursuant CEQA Guidelines section 15061, subdivision (b)(3), because there was "no possibility that the activity in question may have a significant effect on the environment . . . ."

The City's NOE described the project as follows: "A request to amend the previously approved project to allow a fifth story and to replace a 'wrap' condominium unit building with townhomes." It stated that the project was located at 1200 Piper Drive. The preprinted NOE form specified a number exempt statuses and contained the direction to "check one" of the boxes. On the City's NOE, the box for categorical exemptions was checked and CEQA Guidelines sections 15168, subdivision (c)(2),[3] and 15061, subdivision (b)(3),[4] were typed in the space provided. The box for "Statutory Exemptions" was not checked.[5]

---

[3]    CEQA Guidelines section 15168, subdivision (c)(2), states: "If the agency finds that pursuant to [CEQA Guidelines] Section 15162, no new effects could occur or no new mitigation measures would be required, the agency can approve the activity as being within the scope of the project covered by the program EIR, and no new environmental document would be required."

[4]    CEQA Guidelines section 15061, subdivision (b), states in pertinent part: "A project is exempt from CEQA if: . . . [¶] (3) The activity is covered by the general rule that CEQA applies only to projects which have the potential for causing a significant effect on the environment. Where it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment, the activity is not subject to CEQA."

[5]    The NOE form specified "exempt" statuses other than "Categorical Exemption" and "Statutory Exemptions," namely: "Ministerial" (see § 21080, subd. (b)(1) [statutory

As to the "[r]easons why project is exempt," the City's NOE explained: "The project is consistent with the certified EIR for the Transit Area Specific Plan adopted on 6/3/08. The project can also be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment, the activity is not subject to CEQA." This description corresponds with the CEQA Guidelines sections specified on the form.

The trial court granted the appellants' request for judicial notice but sustained the demurrer. It concluded that Government Code section 65457 governed and the 30-day limitation period ran from the date of project approval on November 1, 2011. It rejected the argument that respondents had waived, or were estopped from relying upon, the provisions of Government Code section 65457. The court denied leave to amend as futile.

On March 29, 2012, judgment was entered in favor of respondents.

II

*CEQA Background*

A. *Applicability of CEQA*

"When it enacted CEQA, the Legislature imposed certain limitations on its scope. CEQA applies only to activities that meet the definition of a 'project' under the statute and its implementing administrative regulations. [Citation.]" (*Sunset Sky Ranch Pilots Ass'n v. County of Sacramento* (2009) 47 Cal.4th 902, 907, fn. omitted.)

---

exemption for ministerial projects]; see also CEQA Guidelines §§ 15268, subd. (a), 15300.1), "Declared Emergency" (see § 21080, subd. (b)(3) [statutory exemption for projects related to disaster relief "in a disaster-stricken area in which a state of emergency has been proclaimed by the Governor"]; see also CEQA Guidelines § 15269, subd. (a)), and "Emergency Project" (see § 21080, subd. (b)(4) [statutory exemption for "[s]pecific actions necessary to prevent or mitigate an emergency"]; see also CEQA Guidelines § 15269, subds. (b) & (c)).

"A CEQA 'project' falls into one of three categories of 'activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment . . . .' (§ 21065.)" (*Sunset Sky Ranch Pilots Ass'n v. County of Sacramento, supra,* 47 Cal.4th at p.908.) "Under CEQA, a project is any activity undertaken, assisted, or authorized by a public agency that may have a significant effect on the environment. (§ 21065; CEQA Guidelines, § 15378, subd. (a).)"[6] (*Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 512 (*Stockton Citizens*).) " 'Significant effect on the environment' means a substantial, or potentially substantial, adverse change in the environment." (§ 21068; see CEQA Guidelines, § 15382.) "Such an activity may include any one of a series of individual environment-changing steps contemplated by a staged, master, or program EIR . . . . (See CEQA Guidelines, §§ 15167–15179.)" (*Stockton Citizens*, *supra*, 48 Cal.4th at p. 512.)

Thus, "[t]he first step in CEQA analysis, of course, is [a determination] whether the activity in question amounts to a 'project.' (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380 . . . .)" (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 171, fn. 7.) An activity is not a "project" if it has absolutely no potential to "cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment." (§ 21065; see CEQA Guidelines, § 15378, subd. (a).)

B. *Exemptions from CEQA*

---

[6]    The term "project" is statutorily defined to mean "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and which is any of the following:  [¶]  (a) An activity directly undertaken by any public agency.  [¶]  (b) An activity undertaken by a person which is supported, in whole or in part, through contracts, grants, subsidies, loans, or other forms of assistance from one or more public agencies.  [¶]  (c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (§ 21065.)

Once a lead agency determines that an activity falls within the statutory definition of a "project," it must then determine whether the project is nevertheless exempt from CEQA. (CEQA Guidelines, § 15061, subd. (a).) In CEQA itself, "the Legislature specifically exempted certain activities from environmental review. ([*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380]; § 21080, subd. (b).) These exemptions reflect legislative policy decisions." (*Sunset Sky Ranch Pilots Ass'n v. County of Sacramento, supra,* 47 Cal.4th at p. 907, fn. omitted.) Statutes other than CEQA also provide statutory exemptions to CEQA's requirements. (See e.g. Educ. Code, §§ 17196, subd. (a), 17621, subd. (a), 94212, subd. (a); Gov. Code, §§ 12012.5, subd. (f), 15455, subd. (a), 51119, 65457, subd. (a), 65584, subd. (f), 65759, subd. (a), 91543; Health & Saf. Code, §§ 1597.46, subd. (c), 33852, 44561, subd. (a); Pub. Resources Code, §§ 5097.98, subd. (g), 5873, subds. (a) & (b), 8710, 41735, subd. (a), 44203, subd. (g), 25985, subd. (a), 33911; Water Code, §§ 1729, 10652, 13389; see also CEQA Guidelines, § 15282 [partial list of statutory CEQA exemptions not specified in section 21080, subdivision (b)].)

CEQA also authorizes the adoption of regulatory exemptions for classes of projects. (§§ 21080, subd. (b)(9), 21084, subd. (a)). The CEQA Guidelines refer to them as categorical exemptions and they are set forth in the CEQA Guidelines (see CEQA Guidelines, § 15300 et seq.).

If a local agency, which is "any public agency other than a state agency, board, or commission" (§ 21062, see CEQA Guidelines, § 15368), "determines that a project is not subject to [CEQA] *pursuant to subdivision (b) of Section 21080 . . .* , and the local agency approves or determines to carry out the project," it *may* file a notice of this determination, which is referred to as a notice of exemption (NOE). (§ 21152, subd. (b), italics added; see CEQA Guidelines, §§ 15062, 15374; *Stockton Citizens*, *supra*, 48 Cal.4th at p. 488.)

C. *Determination of Significant Environmental Effect*

8

"If the project is not exempt, the lead agency takes the [next] step and conducts an initial study . . . to determine whether the project may have a significant effect on the environment." (CEQA Guidelines, § 15002, subd. (k)(2); see § 21080, subds. (c) & (d); CEQA Guidelines, § 15063.) The lead agency, which is the public agency that "has the principal responsibility for carrying out or approving a project which may have a significant effect upon the environment" (§ 21067, see CEQA Guidelines, §§ 15050-15053, 15367), is "responsible for determining whether an environmental impact report, a negative declaration, or a mitigated negative declaration shall be required for any project which is subject to [CEQA]." (§ 21080.1, subd. (a).)

"If there is substantial evidence, in light of the whole record before the lead agency, that the project may have a significant effect on the environment, an environmental impact report shall be prepared." (§ 21080, subd. (d); see CEQA Guidelines, §§ 15002, subd. (k)(3), 15064, subd. (f)(1), 15080 et seq.) "If a lead agency determines that a proposed project, not otherwise exempt from this division, would not have a significant effect on the environment," it must "adopt a negative declaration to that effect." (§ 21080, subd. (c); see §§ 21064; see also CEQA Guidelines, §§ 15002, subd. (k)(2), 15064, subd. (f)(3), 15070, subd. (a), 15371.) The agency may also adopt a mitigated negative declaration where an initial study shows potential environmental effects but the proposed project is revised to "avoid the effects or mitigate the effects to a point where clearly no significant effect on the environment would occur" and "there is no substantial evidence in light of the whole record before the public agency that the project, as revised, may have a significant effect on the environment." (§ 21064.5, see also §§ 21080, subd. (c)(2), 21080.1, subd. (a); CEQA Guidelines, §§ 15064, subd. (f)(2), 15070, subd. (b), 15369.5.)

"If a local agency approves or determines to carry out a project that is subject to [CEQA]," it must "file notice of the approval or the determination," otherwise known as a

9

notice of determination (NOD), indicating "whether the project will, or will not, have a significant effect on the environment" and "whether an environmental impact report has been prepared pursuant to [CEQA]." (§ 21152, subd. (a); see CEQA Guidelines, §§ 15075, 15094, 15373.) A NOD "announces the agency's ultimate conclusion about the project's expected environmental consequences." (*Committee For Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 46, fn. 10 (*Committee For Green Foothills*).)

D. *Limitations Periods under Section 21167*

Section 21167 establishes the usual limitations periods for CEQA challenges. "With the exception of subdivision (a) [of section 21167], each of the limitation periods in section 21167 is triggered by the filing of a notice of determination or exemption and continues for only 30 or 35 days. (§ 21167, subds. (b)-(e).)"[7] (*Committee For Green Foothills, supra,* 48 Cal.4th at p. 46.) CEQA review must generally be sought within 35 days of the filing of a facially valid NOE (§ 21167, subd. (d); see CEQA Guidelines, §§ 15062, subd. (d), 15112, subd. (c)(2); *Stockton Citizens*, *supra*, 48 Cal.4th at p. 489) or within 30 days of the filing of a facially valid NOD (§ 21167, subds (b), (c), & (e); see CEQA Guidelines, §§ 15075, subd. (g), 15094, subd. (g), 15112, subd. (c)(1); *Committee For Green Foothills*, *supra*, 48 Cal.4th at pp. 47-48, 56-57.)

"[CEQA] seeks to ensure that public agencies will consider the environmental consequences of discretionary projects they propose to carry out or approve. On the

---

[7] "In contrast, the limitations period in subdivision (a) starts when a project is approved or begun, and it continues for 180 days. (§ 21167, subd. (a).) Because subdivision (a) applies to suits alleging that an agency has approved or undertaken a project '*without having determined* whether the project may have a significant effect on the environment' (§ 21167, subd. (a), italics added), it would not have made sense to measure the limitations period from the filing of an NOD. If an agency has made no determination about the environmental impact of a project, it has no determination to announce." (*Committee For Green Foothills*, *supra*, 48 Cal.4th at p. 46.)

other hand, the Act is sensitive to the particular need for finality and certainty in land use planning decisions.  Accordingly, the Act provides 'unusually short' limitations periods [citations] after which persons may no longer mount legal challenges, however meritorious, to actions taken under the Act's auspices." (*Stockton Citizens*, *supra*, 48 Cal.4th at p. 488.)  In general, "CEQA establishes and emphasizes public notification of an agency's action or decision as the event triggering the shortest applicable limitations periods for lawsuits alleging noncompliance with the statute." (*Id*. at p. 502, italics omitted.)  Ordinarily, "such notification, provided in the form and manner specified by the statute, sufficiently advises interested persons of the action or decision so as to trigger the limitations period for lawsuits asserting that the agency has proceeded in violation of CEQA.  [Citation.]" (*Ibid*.)

"CEQA's purpose to ensure extremely prompt resolution of lawsuits claiming noncompliance with the Act is evidenced throughout the statute's procedural scheme." (*Id*. at p. 500.)  "[A] statute of limitations applies regardless of the merits of the underlying lawsuit." (*Id*. at p. 501, fn. omitted; see *id*. at p. 426.)

III

*Analysis*

A.  *Standard of Review*

The party against whom a complaint has been filed may "object by demurrer on the ground that '[t]he pleading does not state facts sufficient to constitute a cause of action,' including that the claims are barred by the applicable statutes of limitations. (Code Civ. Proc., § 430.10, subd. (e); *Bell v. Bank of California* (1908) 153 Cal. 234, 245.)" (*Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* (2011) 200 Cal.App.4th 1470, 1482.)  "The right of the respondent in a mandamus proceeding to test the legal sufficiency of the petition for a writ by demurrer thereto has always been

11

recognized by the courts of this state.  [Citations.]"  (*Matteson v. Board of Ed. of City of Los Angeles* (1930) 104 Cal.App. 647, 650; see Code Civ. Proc., § 1109.)

"On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.  [Citations.]' [Citation.]  We may also consider matters that have been judicially noticed.  [Citations.]  ' "A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred.  [Citation.]  In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.  [Citation.]" [Citation.]' [Citation.]"  (*Committee For Green Foothills*, *supra*, 48 Cal.4th at p. 42.)  " ' "[A] complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." [Citation.]' [Citations.]"  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.  [Citation.]"  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  "The plaintiff has the burden of proving that an amendment would cure the defect.  [Citation.]"  (*Ibid.*)

B. *Appellants' CEQA Claims are Time-Barred*

1. *Government Code section 65457*

Government Code section 65457, a part of the Planning and Zoning Law (see Gov. Code, § 65000), was the basis for respondents' demurrer.  That section sets forth an exemption from CEQA for residential development projects that are undertaken to

12

implement and consistent with a specific plan[8] for which an EIR has been certified.  It provides an attendant, special statute of limitations.

Government Code section 65457 was derived from former Government Code section 65453 (Stats. 1979, ch. 1207, § 9, pp. 4746-4748).  Subdivision (b) of the predecessor section exempted from CEQA residential projects that were "undertaken pursuant to and in conformity with a specific plan" for which an EIR was certified after January 1, 1980.  (Stats. 1979, ch. 1207, § 9, p. 4747; see Legis. Counsel's Dig., Assem. Bill No. 1207 (1979-1980 Reg. Sess.) 4 Stats. 1979, Summary Dig., p. 403.)  The exemption did not apply if "an event as specified in Section 21166 of the Public Resources Code" occurred after the adoption of the specific plan unless a supplemental EIR for the specific plan was prepared and certified in accordance with CEQA.  (Stats. 1979, ch. 1207, § 9, p. 4747.)  Under former Government Code section 65453, "[a]n action or proceeding alleging that a public agency has approved a [residential] project pursuant to (or in conformity with) a specific plan without having previously adopted a supplemental environmental impact report for the specific plan," where required by that law, was subject to a 30-day statute of limitations that began running from "the public agency's decision to carry out or approve such project in accordance with the specific plan."  (Stats. 1979, ch. 1207, § 9, p. 4747.)

---

[8]     "Each planning agency shall prepare and the legislative body of each county and city shall adopt a comprehensive, long-term general plan for the physical development of the county or city, and of any land outside its boundaries which in the planning agency's judgment bears relation to its planning.  Chartered cities shall adopt general plans which contain the mandatory elements specified in [Government Code] Section 65302."  (Gov. Code, § 65300.)  "After the legislative body has adopted a general plan, the planning agency may, or if so directed by the legislative body, shall, prepare specific plans for the systematic implementation of the general plan for all or part of the area covered by the general plan."  (Gov. Code, § 65450; see Gov. Code, § 65451 [required contents of a specific plan].)  "[N]o tentative map . . . may be approved . . . within an area covered by a specific plan unless it is consistent with the adopted specific plan."  (Gov. Code, § 65455.)

In 1984, former Government Code section 65453 was repealed (Stats. 1984, ch. 1009, § 17, p. 3491) and Government Code section 65457 was enacted (Stats. 1984, ch. 1009, § 187, p. 3493).

Government Code section 65457, subdivision (a), states: " Any residential development project, including any subdivision, or any zoning change that is undertaken to implement and is consistent with a specific plan for which an environmental impact report has been certified after January 1, 1980, is exempt from the requirements of Division 13 (commencing with Section 21000) of the Public Resources Code. However, if after adoption of the specific plan, an event as specified in Section 21166 of the Public Resources Code occurs, the exemption provided by this subdivision does not apply unless and until a supplemental environmental impact report for the specific plan is prepared and certified in accordance with the provisions of Division 13 (commencing with Section 21000) of the Public Resources Code. After a supplemental environmental impact report is certified, the exemption specified in this subdivision applies to projects undertaken pursuant to the specific plan."

Section 21166, part of CEQA, provides: "When an environmental impact report has been prepared for a project pursuant to this division, no subsequent or supplemental environmental impact report shall be required by the lead agency or by any responsible agency, unless one or more of the following events occurs: [¶] (a) Substantial changes are proposed in the project which will require major revisions of the environmental impact report. [¶] (b) Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report. [¶] (c) New information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available." Where environmental review has been conducted through a program EIR, CEQA requires further review only in these limited circumstances.

14

(§ 21166; see CEQA Guidelines, §§ 15162, 15168, *Committee For Green Foothills*, *supra*, 48 Cal.4th at p. 46.)

The recent decision of *Concerned Dublin Citizens v. City of Dublin* (2013) 214 Cal.App.4th 1301 is the first published case to apply section 65457, subdivision (a). It stated: "The section 65457 exemption, like other statutory exemptions, reflects the Legislature's determination that the interest promoted is 'important enough to justify forgoing the benefits of environmental review.' [Citations.] Under section 65457, a residential development project that is consistent with a specific plan for which an EIR already has been certified ordinarily is statutorily exempt from further CEQA review regardless of possible environmental impacts of the project." (*Id*. at p. 1312.) It observed that "[t]he qualification contained in . . . section 65457 delays application of the exemption 'unless and until' further environmental review of the specific plan has taken place if required by Public Resources Code section 21166." (*Ibid*.) It held that "insofar as the exemption under section 65457 turns on whether Public Resources Code section 21166 requires updating of the program EIR, we apply the same substantial evidence standard of review that governs review of a determination that a supplemental EIR is not required under section 21166. [Citation.]" (*Id*. at pp. 1312-1313.)

Subdivision (b) of Government Code section 65457 provides a 30-day limitations period: "An action or proceeding alleging that a public agency has approved a project pursuant to a specific plan without having previously certified a supplemental environmental impact report for the specific plan, where required by subdivision (a), shall be commenced *within 30 days of the public agency's decision to carry out or approve the project*." (Italics added.)

Government Code section 65457 is implemented by CEQA Guidelines section 15182. Its subdivision (e) states: "Statute of Limitations. A court action challenging the approval of a [residential] project under this section for failure to prepare a supplemental

15

EIR shall be commenced within 30 days after the lead agency's decision to carry out or approve the project in accordance with the specific plan."

In this case, the petition's allegations essentially assert that a supplemental EIR is required because substantial changes have occurred with respect to the circumstances under which the Citation Residential Project is being undertaken and new information has come to light that was not available when the TASP was certified. These allegations are events recognized by subdivisions (b) and (c) of section 21166. (See CEQA Guidelines, § 15162, subds. (a)(2), (a)(3), (b).) Judicially noticed documents establish that the City Council determined, however, that the residential development project was consistent with the 2008 certified EIR for the Transit Area Specific Plan and presented no possibility of any significant environmental effect.

2. *Resolution Factually Invoked Government Code Section 65457's Exemption*

When it granted further approvals with respect to the Citation residential development by resolution, the City Council in essence factually invoked Government Code section 65457's exemption for "residential development projects "undertaken to implement and is consistent with a specific plan for which an environmental impact report has been certified after January 1, 1980." (Gov. Code, § 65457, subd. (a).) Its Resolution expressly stated that the project was exempt and it was "consistent with the certified EIR for the Transit Area Specific Plan adopted on June 3, 2008."

In claiming that exemption, the Resolution referred to CEQA Guidelines section 15168, subdivision (c)(2), which in turn refers to CEQA Guidelines section 15162, which implements section 21166. (See *Abatti v. Imperial Irr. Dist.* (2012) 205 Cal.App.4th 650, 653, 655.) CEQA Guidelines section 15168 explains program EIR's and their use with later activities. CEQA Guidelines section 15168, subdivision (c)(2), makes clear that an agency is authorized to "approve the activity as being within the scope of the project covered by the program EIR" without any further environmental

16

document where "the agency finds that pursuant to [CEQA Guidelines] Section 15162, no new effects could occur or no new mitigation measures would be required . . . ." The Resolution's reference to CEQA Guidelines section 15168, subdivision (c)(2), implied that "an event as specified in Section 21166 of the Public Resources Code" had *not* occurred. (See Gov. Code, § 65457, subd. (a).)

The City Council's Resolution also referred to CEQA Guidelines section 15061, subdivision (b)(3), which explains that "CEQA applies only to projects which have the potential for causing a significant effect on the environment." It specifies that an "activity is not subject to CEQA" "[w]here it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment . . . ." (CEQA Guidelines, § 15061, subd. (b)(3).) While this regulation specifies that CEQA's nonapplication under those particular circumstances makes the "project" exempt and this exemption has been described as "the common sense exemption" (*Muzzy Ranch Co. v. Solano County Airport Land Use Com'n, supra,* 41 Cal.4th at pp. 385-386), it is not a true exemption in the sense that it is a determination that CEQA did not apply in the first place. An activity is not actually a "project" as statutorily defined unless the activity might cause a physical change in the environment. (See § 21065; see also § 21080, subds. (c) and (d).) In any case, the Resolution's reference to Guidelines section 15061, subdivision (b)(3), similarly conveyed that the City Council had concluded that the approved amendments for the Citation Residential Project would not cause any new environmental effects.

3. *Government Code Section 65457's Statute of Limitation*

Government Code section 65457's 30-day statute of limitations is not made contingent upon the filing, or the omission to file, an NOE. (Gov. Code, § 65457, subd. (b); cf. § 21167, subd. (d).) Moreover, it begins to run upon the agency's decision to approve the project.

In their petition, appellants in effect contend that further environmental review was required because events specified in section 21166 had occurred after adoption of the TASP. If true, this would make Government Code section 65457's exemption inapplicable "unless and until a supplemental environmental impact report for the specific plan is prepared and certified." (Gov. Code, § 65457, subd. (a).) But the potential merits of appellants' CEQA claims do not affect the application of the statute of limitations established by Government Code section 65457, subdivision (b).

In *Stockton Citizens, supra,* 48 Cal.4th 481, the court stated: "A statute of limitations ' "necessarily fix[es]" a "definite period[ ] of time" [citation], and hence operates conclusively across-the-board. It does so with respect to *all* causes of action, both those that do not have merit and also those that do. That it may bar meritorious causes of action as well as unmeritorious ones is the "price of the orderly and timely processing of litigation" [citation]—a price that may be high, but one that must nevertheless be paid.' [Citations.]" (*Id*. at p. 499.) The court indicated that the *timeliness* of a lawsuit should not be confused with its *merits*. (*Id*. at p. 501.) The court stated that "a statute of limitations applies regardless of the merits of the underlying lawsuit." (*Ibid*., fn. omitted.) In *Committee For Green Foothills, supra,* 48 Cal.4th 32, the Supreme Court stated that "a merits-based inquiry is irrelevant to a statute of limitations analysis." (*Id*. at p. 54.)

18

Consequently, when the petition was filed on December 7, 2011, it was already time barred because the 30-day statute of limitation had run. It affirmatively appears from the face of the petition together with the judicially noticed documents that this CEQA challenge is necessarily time-barred by Government Code section 65457's 30-day statute of limitations. The superior court properly sustained the demurrer.

C. *Appellants' Contentions*

1. *Interpretation of Government Code Section 65457, Subdivision (b)*

Appellants insist that their petition is *not* "[a]n action or proceeding alleging that a public agency has approved a project pursuant to a specific plan without having previously certified a supplemental environmental impact report for the specific plan, where required by [Government Code section 65457,] subdivision (a)" (Gov. Code, § 65457, subd. (b)) and, therefore, it is not subject to Government Code section 65457's statute of limitations. Appellants argue that they are not claiming that the 2008 program EIR for the TASP was deficient and they are not requesting a supplemental EIR for that specific plan. Rather, they assert that they are seeking "a free-standing EIR, or alternatively a mitigated negative declaration, focused on the distinct Citation Home Project at issue here." They also insist that the project at issue here is not the same project reviewed in the 2008 program EIR.

To some extent, these arguments conflict with the factual allegations of their petition and the judicially noticed documents. As indicated, for the purpose of assessing the petition's sufficiency to withstand a demurrer, we accept as true all well-pleaded factual allegations and we consider judicially noticed facts, and we disregard conclusions of law and allegations contrary to those judicially noticed facts. (*Committee For Green Foothills*, *supra*, 48 Cal.4th at p. 42; *Stanton v. Dumke* (1966) 64 Cal.2d 199, 201-202.) The petition, the Resolution, and the NOE reflect that the City Council had previously approved the residential development and, in approving the proposed amendments, the

19

City Council found that the project was consistent with the TASP for which an EIR had been certified.

Furthermore, appellants' contentions ignore the broad definition of "project" and the use of "tiering" in the preparation of environmental documents. As explained in the CEQA Guidelines, the term "project" "means the whole of an action" (CEQA Guideline, § 15378, subd. (a)) and "refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies" (CEQA Guideline, § 15378, subd. (c)). "The term 'project' does not mean each separate governmental approval." (*Ibid*.)

Under CEQA, a lead agency is not required to reexamine adverse environmental effects of a project that were adequately examined in a prior EIR encompassing the project and, where further approvals are necessary, may use a tiered EIR to examine environmental effects that were not previously addressed. "Tiering is a process 'by which an agency prepares a series of EIRs or negative declarations, typically moving from general, regional concerns to more site-specific considerations with the preparation of each new document.' (Remy et al., Guide to CEQA (11th ed.2006) p. 601.)"[9]

---

[9] Section 21068.5 states: " 'Tiering' or 'tier' means the coverage of general matters and environmental effects in an environmental impact report prepared for a policy, plan, program or ordinance followed by narrower or site-specific environmental impact reports which incorporate by reference the discussion in any prior environmental impact report and which concentrate on the environmental effects which (a) are capable of being mitigated, or (b) were not analyzed as significant effects on the environment in the prior environmental impact report." CEQA Guideline section 15385 explains: " 'Tiering' refers to the coverage of general matters in broader EIRs (such as on general plans or policy statements) with subsequent narrower EIRs or ultimately site-specific EIRs incorporating by reference the general discussions and concentrating solely on the issues specific to the EIR subsequently prepared. Tiering is appropriate when the sequence of EIRs is: [¶] (a) From a general plan, policy, or program EIR to a program, plan, or policy EIR of lesser scope or to a site-specific EIR. [¶] (b) From an EIR on a specific action at an early stage to a subsequent EIR or a supplement to an EIR at a later stage. Tiering in such

(*Environmental Protection Information Center v. California Dept. of Forestry and Fire Protection* (2008) 44 Cal.4th 459, 502.) CEQA "permits the environmental analysis for long-term, multipart projects to be 'tiered,' so that the broad overall impacts analyzed in an EIR at the first-tier programmatic level need not be reassessed as each of the project's subsequent, narrower phases is approved . . . ." (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 429, fn. omitted.)

A program EIR may serve as a first tier EIR. (See §§ 21068.5, 21093, 21094; CEQA Guidelines, § 15152; see CEQA Guidelines, § 15168, subd. (a).) "Subsequent activities in the program must be examined in the light of the program EIR to determine whether an additional environmental document must be prepared." (CEQA Guidelines, § 15168, subd. (c); see § 21094, subd. (a); CEQA Guidelines, § 15152, subd. (d).) Government Code section 65457 in effect recognizes that a site-specific residential development may be part of a broader specific plan "project" where the residential development "is undertaken to implement and is consistent with a specific plan for which an environmental impact report has been certified . . . ."

Government Code section 65457 does not define the phrase "a supplemental environmental impact report for the specific plan" as used by the section. Insofar as the "statute is ambiguous, we may consider a variety of extrinsic aids, including legislative

cases is appropriate when it helps the lead agency to focus on the issues which are ripe for decision and exclude from consideration issues already decided or not yet ripe."

The California Legislature has found and declared that "tiering of environmental impact reports will promote *construction of needed housing* and other development projects by (1) streamlining regulatory procedures, (2) avoiding repetitive discussions of the same issues in successive environmental impact reports, and (3) ensuring that environmental impact reports prepared for later projects which are consistent with a previously approved policy, plan, program, or ordinance concentrate upon environmental effects which may be mitigated or avoided in connection with the decision on each later project." (§ 21093, subd. (a), italics added.) It has mandated that, "[t]o achieve this purpose, environmental impact reports shall be tiered whenever feasible, as determined by the lead agency." (§ 21093, subd. (b).)

21

history, the statute's purpose, and public policy. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 . . . .)" (*People v. Arias* (2008) 45 Cal.4th 169, 177.) To resolve any ambiguity created by the statutory phrase "for the specific plan," we will examine the legislative history of Government Code section 65457 and its predecessor, former Government Code section 65453.[10]

The essential goal of the 1979 bill (Assem. Bill No. 1151) enacting former Government Code section 65453 was to increase the supply of housing in California. (Stats. 1979, ch. 1207, §§ 1, 2, 3, 4, 5, 6, pp. 4738-4740.) The bill enacting that section contained extensive legislative findings and declarations, including the following. "It is a matter of urgent public necessity that the housing supply shortfall in California be eliminated." (Stats. 1979, ch. 1207, § 2, p. 4738.) A cause of the housing problem is "[g]overnment statutes, regulations, and policies which are insensitive to housing, or which individually or collectively, tend to frustrate the production of housing." (Stats. 1979, ch. 1207, § 2, pp. 4738-4739.)

The enrolled bill report prepared by the Department of Housing and Community Development explained the bill's CEQA exemption for residential developments: "If an EIR has been prepared and certified in connection with a specific plan, no new EIR or negative declaration would be required for any residential project, unless after adoption an event occurs that changes the conditions under which the original EIR was prepared. After the supplemental EIR has been prepared, projects undertaken pursuant to the specific plan would again be exempt from a separate EIR. Any action alleging that a public agency has approved a project pursuant to a specific plan without having adopted a supplemental EIR when required must be commenced within 30 days of the public agency's decision to approve a project pursuant to a specific plan." (Cal. Dept. Housing

---

[10]    We take judicial notice of the reports discussed below. (Evid. Code, §§ 452, 459.)

22

and Community Development, Enrolled Bill Rep. on Assem. Bill No. 1151 (1979-80 Reg. Sess.) Sept. 21, 1979, p. 2.)

The enrolled bill report prepared by the California Resources Agency reported that the agency and the Office of Planning and Research had "opposed the outright exemption." (Cal. Resources Agency, Enrolled Bill Rep. on Assem. Bill No. 1151 (1979-80 Reg. Sess.) September 18, 1979, p. 1.) It indicated that Government Code section 65457's language resulting from amendments represented a compromise between an absolute CEQA exemption and no exemption. (*Id*. at p. 3.) The report stated: "The paperwork would be greatly reduced for residential projects which are consistent with a specific plan. At the same time the local agency would be required to analyze the later projects to see if they would have any new significant effects not analyzed in the specific plan EIR. If new significant effects would occur, the project could not be approved without their own EIRs until the local agency prepared a supplemental EIR for the specific plan covering those new impacts. In this way, the local agency would be required to address the specific environmental problems of later developments." (*Ibid*.)

Prior to enactment of Government Code section 65457, the Senate Democratic Caucus summarized the proposed law's effect with regard to specific plans: "Cities and counties can adopt 'specific plans' which serve as bridge between their general plan and individual development proposals. . . . [¶] This bill recasts and simplifies the specific plan statute by repealing several outdated and detailed requirements. . . . Once adopted, the specific plan becomes the basis for making land use decisions in that area. The bill continues the current California Environmental Quality Act (CEQA) exemption for housing projects that are consistent with a specific plan for which there already is an environmental impact report." (Sen. Democratic Caucus, Rep. on Assem. Bill No. 2038 (1983-1984 Reg. Sess.) as amended Aug. 22, 1984, p. 2; Sen. Democratic Caucus, Rep. on Assem. Bill No. 2038 (1983-1984 Reg. Sess.) as amended Aug. 6, 1984, p. 2.)

23

The foregoing legislative history discloses that the very purpose of Government Code section 65457's exemption is to generally excuse a residential development project within its scope from further environmental review except where an event specified in section 21166 occurs. If the statutory language concerning the statute of limitations was read literally to require the petition to allege that the public agency failed to certify a supplemental EIR "for the specific plan" as appellants suggest, the bar could be easily circumvented by merely alleging instead that the agency failed to certify a supplemental EIR for the particular residential development project. " ' "It is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' [Citations.]" (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113.) More importantly, any claim that the exemption did not apply to the Resolution's approval of the permit and tentative map amendments for the Citation Residential Project goes to the petition's merits, which we do not resolve at the demurrer stage. (See *Committee For Green Foothills*, *supra*, 48 Cal.4th at p. 56.)

Thus, whereas approval of a nonresidential development project undertaken to implement and consistent with a specific plan for which a program EIR was certified, without preparation of any further environmental document, may lead to the filing of a NOD that would trigger the 30-day statute of limitation under section 21167, subdivision (e) (see *Committee For Green Foothills*, *supra*, 48 Cal.4th at p. 56, see also § 21152, subd. (a)), approval of a residential development project within the purview of Government Code section 65457's exemption begins a 30-day statute of limitations. (Gov. Code, § 65457, subd. (b).)

2. *Statute of Limitations Under Section 21167, Subdivision (d)*

Appellants maintain that a "NOE serves no purpose other than to establish a 35-day limitations period" under section 21167, subdivision (d). They argue that this

24

conclusion is a matter of "simple statutory construction . . . ." They assert that since an NOE was filed and posted, the present CEQA challenge is subject to the 35-day limitations period set forth in that subdivision.[11]

Subdivision (d) of section 21167 sets forth three limitations periods, including the 35-day limitations period where a NOE is filed, which apply to "[a]n action or proceeding alleging that a public agency has improperly determined that a project is not subject to this division *pursuant to subdivision (b) of Section 21080* or [now former] Section 21172 . . . ." (Italics added.) Former section 21172 has no applicability to this case.[12] Subdivision (b) of section 21080 sets forth a number of statutory exemptions and other activities not subject to CEQA. The list does *not* include Government Code section 65457's exemption.

Appellants nonetheless attempt to bring their action within the scope of section 21167, subdivision (d), by arguing that the City's NOE reflected that the project in this case was "exempt from CEQA based on two exemptions identified by Section 21080(b)(9)-CEQA Guidelines §§ 15168(c)(2) and 15061(b)(3)." This assertion is legally incorrect.

Subdivision (b)(9) of section 21080 exempts from CEQA "[a]ll classes of projects designated pursuant to Section 21084." Section 21084, subdivision (a), states: "The

_____

[11] We do not address appellants' claim, raised for the first time in their reply briefs, that the City's NOE was defective because it failed to identify the specific statutory exemption and, consequently, "the 180-day limitations period applies, not a shorter 30-day period." "It is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party." (*People v. Tully* (2012) 54 Cal.4th 952, 1075; see *People v. Smithey* (1999) 20 Cal.4th 936, 1017, fn. 26; *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)

[12] Former section 21172 has been repealed. (Stats. 2012, ch. 548, § 13, p. 4890.) It was enacted in 1972 and exempted from CEQA specified projects relating to property damaged "as a result of a disaster in a disaster stricken area in which a state of emergency has been proclaimed by the Governor . . . ." (Stats.1972, ch. 1154, § 16, p. 2279, eff. Dec. 5, 1972.) Such an exemption continues in section 21080, subdivision (b)(3).

25

[regulatory] guidelines prepared and adopted pursuant to Section 21083 shall include a list of classes of projects that have been determined not to have a significant effect on the environment and that shall be exempt from this division. In adopting the guidelines, the Secretary of the Natural Resources Agency shall make a finding that the listed classes of projects referred to in this section do not have a significant effect on the environment."

In response to the mandate of section 21084, the Secretary for Resources has found certain classes of projects "do not have a significant effect on the environment" and declared them "to be categorically exempt from the requirement for the preparation of environmental documents." (CEQA Guidelines, § 15300.) These exempt classes, commonly referred to as "categorical exemptions," are listed in article 19 of the CEQA Guidelines. (See CEQA Guidelines, §§ 15301-15333 [33 categorically exempt classes].) Neither CEQA Guidelines section 15168, subdivision (c)(2), nor CEQA Guidelines section 15061, subdivision (b)(3), describe a class of projects categorically exempted pursuant to section 21084 and set forth in CEQA Guidelines sections 15301 to 15333.

Appellants also baldly assert that CEQA Guidelines section 15182, which implements Government Code section 65457, is an exemption recognized in section 21080, subdivision (b)(9). While it is a promulgated administrative regulation, it is not a categorical exemption established pursuant to section 21084. (See CEQA Guidelines, §§ 15300-15333.)

Appellants nevertheless maintain that the NOE triggered a 35-day limitations period under section 21167, subdivision (d), citing *Stockton Citizens*, *supra*, 48 Cal.4th 481 and *Committee For Green Foothill*, *supra*, 48 Cal.4th 32. Neither case involved application of Government Code section 65457. Appellants rely on a number of statements taken out of context from those cases.

In *Stockton Citizens*, unlike this case, there was no dispute that section 21167, subdivision (d), governed. The question was whether its 35-day limitations period or one

of its 180-day limitations periods applied (see fn. 13, *post*).  In *Committee For Green Foothills*, *supra*, 48 Cal.4th 32, the issue was whether the filing of an NOD, allegedly without any environmental review, triggered a 30-day statute of limitations or a 180-day statute of limitations under section 21167.  (*Id*. at p. 39.)  The court held that "[w]hen an agency files an NOD for the approval of a subsequent activity [to a program EIR], and, in accordance with section 21166 and Guidelines, section 15168, no negative declaration or EIR has been prepared for the activity, section 21167, subdivision (e) appears to furnish the appropriate statute of limitations for challenges to the agency's action."  (*Id*. at p. 56.)

" 'It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court.  An opinion is not authority for propositions not considered.' (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals* Bd. (1999) 19 Cal.4th 1182, 1195 . . . .)"  (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680.)

We have no sound basis for concluding that the mere filing of a NOE makes section 21167, subdivision (d), applicable and renders Government Code section 65457 inapplicable.

3.  *CEQA Guidelines Section 15062*

Appellants alternatively argue, based on CEQA Guidelines section 15062, that the filing of an NOE necessarily triggered a 35-day statute of limitation.  This regulation concerns NOE's and its subdivision (a) provides in part: "When a public agency decides that a project is exempt from CEQA *pursuant to Section 15061*, and the public agency approves or determines to carry out the project, the agency may file a notice of exemption."  (Italics added.)  Subdivision (d) of CEQA Guidelines section 15062 states: "The filing of a Notice of Exemption and the posting on the list of notices start a 35 day statute of limitations period on legal challenges to the agency's decision that the project is

27

exempt from CEQA. If a Notice of Exemption is not filed, a 180 day statute of limitations will apply."[13]

"Generally, the same rules of construction and interpretation which apply to statutes govern the construction and interpretation of rules and regulations of administrative agencies. [Citation.]" (*California Drive-In Restaurant Ass'n v. Clark* (1943) 22 Cal.2d 287, 292.) Courts do not examine statutory language "in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) We are required to construe a provision "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness" (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814) and to avoid an interpretation that renders language a nullity (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 357).

Subdivision (d) of CEQA Guidelines section 15061 states: "After determining that a project is exempt [impliedly pursuant to the previous subdivisions], the agency may prepare a notice of exemption as provided in Section 15062." Subdivision (b) of CEQA Guidelines section 15061 lists specified "exemptions" from CEQA. Conspicuously absent from the list is the statutory exemption established by Government Code section 65457 or its implementing regulation, CEQA Guidelines section 15182.

When read in context, it is apparent that CEQA Guidelines section 15062, subdivision (d), specifying a 35-day limitations period, is inapplicable to Government

---

[13]     Section 21167, subdivision (d), provides in part: "If the notice [of exemption] has *not been filed*, the action or proceeding shall be commenced within 180 days from the date of the public agency's decision to carry out or approve the project, or, if a project is undertaken without a formal decision by the public agency, within 180 days from the date of commencement of the project." (Italics added.)

28

Code section 65457's exemption. Additionally, an administrative agency has no "discretion to promulgate a regulation which is inconsistent with the governing statute." (*Woods v. Superior Court* (1981) 28 Cal.3d 668, 679; see Gov. Code, § 11342.2.)[14] We reject appellants' interpretation of CEQA Guidelines section 15062, subdivision (d), with respect to Government Code section 65457's statute of limitations since it would nullify CEQA Guidelines section 15182 and contradict Government Code section 65457.[15]

4. *Resolving Conflict Between Statutes of Limitations*

If the filing of a NOE relying in part on CEQA Guidelines section 15061, subdivision (b)(3) (no possibility of significant environmental effect), created a conflict between the 35-day statute of limitations provided by section 21167, subdivision (d) (see CEQA Guidelines § 15062, subds. (a) & (d)), and the 30-day statute of limitation provided by Government Code section 65457, subdivision (b), the latter statute of limitations controls. Both sections apply to CEQA challenges and, therefore, it cannot be said that either's statute of limitation provision is more specific to CEQA claims. (Cf. *Committee for a Progressive Gilroy v. State Water Resources Control Bd.* (1987) 192 Cal.App.3d 847, 859 [CEQA's statute of limitations took precedence over former Water Code section].) "If conflicting statutes [of limitations] cannot be reconciled, later enactments supersede earlier ones [citation], and more specific provisions take

---

[14]    "Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11342.2.)

[15]    Appellants similarly assert that CEQA Guidelines section 15112, subdivision (c)(2), mandates a 35-day limitations period running from the filing of the NOE. That regulation provides that "[w]here the public agency filed a notice of exemption *in compliance with Section 15062*, [the limitation period is] 35 days after the filing of the notice and the posting on a list of such notices." (Italics added.) We reject this argument with respect to Government Code section 65457's exemption and statute of limitations for the same reasons.

precedence over more general ones [citation]." (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310; see Code Civ. Proc., § 1859.) Government Code section 65457, like its predecessor, is addressed to a narrow and specific circumstance. Given the Legislative intent underlying its enactment and the cardinal principles of statutory interpretation, the later enacted and more specific Government Code section 65457, subdivision (b), prevails over section 21167, subdivision (d), in the present case if there is a conflict. (See Stats. 1974, ch. 56, § 3, pp. 125-126; Stats. 1979, ch. 1207, § 9, pp. 4746-4747; Stats. 1989, ch. 1009, § 18, p. 3493.)

D. *Estoppel and Leave to Amend*

" 'Estoppel must be pleaded and proved as an affirmative bar to a defense of statute of limitations.' [Citation.]" (*Ard v. County of Contra Costa* (2001) 93 Cal.App.4th 339, 348.) The burden of showing that the defective pleading may be cured by an amendment pleading estoppel rests squarely on appellants. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) They must show in what manner they can amend the petition and how such amendment will change its legal effect. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)

It is a "venerable principle that ' "[o]ne cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought." ' [Citations.]" (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383.) The doctrine of equitable estoppel addresses " ' ". . . the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. . . ." ' [Citation.]" (*Ibid.*)

"Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citations.]" (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305.) The detrimental reliance must be reasonable. (See *Lantzy v. Centex Homes, supra,* 31 Cal.4th at p. 384; *Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1152-1153.) "The defendant's statement or conduct must amount to a misrepresentation bearing on the *necessity* of bringing a timely suit . . . . [Citations.]" (*Lantzy v. Centex Homes*, *supra*, 31 Cal.4th at p. 384, fn. 18.)

"As [the California Supreme Court] long ago explained in *McKeen v. Naughton* (1891) 88 Cal. 462, 467 . . . , ' "in order to work an estoppel," ' a representation ' "must generally be a statement of *fact*. It can rarely happen that the statement of a proposition of law will conclude the party making it from denying its correctness, except when it is understood to mean nothing but a simple statement of fact." [Citation.]' " (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1315.) "[I]n the absence of a confidential relationship . . . where the material facts are known to both parties and the pertinent provisions of law are equally accessible to them, a party's inaccurate statement of the law or failure to remind the other party about a statute of limitations cannot give rise to an estoppel." (*Jordan v. City of Sacramento* (2007) 148 Cal.App.4th 1487, 1496.)

Moreover, "[i]n general, the law 'particularly' disfavors estoppels 'where the party attempting to raise the estoppel is represented by an attorney at law.' [Citation.] For purposes of analyzing estoppel claims, attorneys are 'charged with knowledge of the law in California.' (*Tubbs v. Southern Cal. Rapid Transit Dist.* (1967) 67 Cal.2d 671, 679 . . . [rejecting claim of estoppel to assert statute of limitations].)" (*Steinhart v. County of Los*

31

*Angeles, supra,* 47 Cal.4th at p. 1316.)  In this case, appellants were represented by counsel, who filed the petition.

Appellants have not identified any misrepresentation of fact made by respondents. Further, neither the City Council's Resolution nor the City's NOE cited to any statute or CEQA regulation specifying a 35-day limitations period.  Both documents clearly indicated that the project was a residential development and was exempt because it was consistent with the certified EIR for the Transit Area Specific Plan adopted on June 3, 2008.  The mere fact that the City filed a NOE or the NOE failed to cite Government Code section 65457 or additionally cited to CEQA Guidelines section 15061, subdivision (b)(3), is insufficient to give rise to an estoppel.

As noted by appellants, a document labeled "CEQA Document Declaration" was filed in the Santa Clara County Recorder's Office.  It merely indicated that $50 had been paid for the NOE and the notice would be posted for 35 days commencing November 11, 2011.  This document does not lend support for estoppel since it would have been unreasonable to rely on that information to determine the applicable limitations period.[16]

"[L]eave to amend is properly granted where resolution of the legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations. [Citation.]"  (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747.)  Appellants have not shown, however, there is any reasonable possibility of amending the petition to show respondents are estopped from invoking Government Code section 65457's 30-day

---

[16]     "Copies of the NOE, once filed [by a local agency], must be available for public inspection.  The notice must be posted within 24 hours of receipt by the county clerk's office and must remain posted for 30 days, after which the county clerk must return it to the agency.  (§ 21152, subd. (c); CEQA Guidelines, § 15062.)"  (*Stockton Citizens*, *supra*, 48 Cal.4th at pp. 498-499; see *Committee For Green Foothills*, *supra*, 48 Cal.4th at p. 43.)

statute of limitations. The trial court did not abuse its discretion in sustaining the demurrer without leave to amend. (See *Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

DISPOSITION

The judgment is affirmed.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.

Trial Court:                        Santa Clara County Superior Court

Trial Judge:                      Hon. Joseph Huber

Attorneys for Appellants:      Lozeau Drury and
Richard T. Drury and
Michael R. Lozeau

Attorneys for Respondents
  and Real Parties in Interest:   Sheppard, Mullin, Richter & Hampton and
David P. Lanferman,
Arthur J. Friedman and
Alexander L. Merritt

Rutan & Tucker and
David P. Lanferman