Filed 5/9/22; Certified for Publication 6/1/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| COMMITTEE FOR SOUND WATER AND LAND DEVELOPMENT,<br><br>    Plaintiff and Appellant,<br><br>        v.<br>CITY OF SEASIDE,<br><br>    Defendant and Respondent;<br><br>KB BAKEWELL SEASIDE VENTURE II, LLC,<br><br>    Real Party in Interest and Respondent. | H049031<br>(Monterey County<br>Super. Ct. No. 20CV002326) |

## I.  INTRODUCTION

This action arises from the proposal of real party in interest KB Bakewell Seaside Venture II (KB Bakewell) to develop a large project known as Campus Town on the former Fort Ord military base.  Respondent City of Seaside (City) certified an environmental impact report (EIR) pursuant to CEQA[1] for the Campus Town specific

---

[1] California Environmental Quality Act, Public Resources Code section 21000, et seq.  All statutory references are to the Public Resources Code unless otherwise indicated.

plan and approved the project. After holding a public hearing, the Fort Ord Reuse Authority (FORA) determined that the Campus Town project was consistent with the Fort Ord Reuse Plan.

Appellant The Committee for Sound Water and Land Development (Committee), self-described as a California nonprofit organization comprised of residents, voters, property owners, and taxpayers within City, filed a petition for writ of mandate that included 11 causes of action alleging that the EIR for the Campus Town project violated CEQA and a 12th cause of action alleging that FORA's failure to provide the Committee with notices of the consistency hearing for the project constituted a violation of the Committee's constitutional right to due process.

KB Bakewell demurred to the writ petition on the grounds that the CEQA causes of action were time-barred and the due process cause of action was moot. City demurred on the grounds that the writ petition was a sham pleading and subject to the defense of laches. The trial court sustained the demurrers without leave to amend. For the reasons stated below, we conclude that the trial court did not err and consequently affirm the judgment of dismissal.

## II. FACTUAL BACKGROUND

Our summary of the facts is drawn from the allegations of the writ petition filed on September 1, 2020, and the requests for judicial notice filed below. In reviewing a ruling sustaining a demurrer without leave to amend, we assume the truth of the properly pleaded factual allegations and the matters properly subject to judicial notice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

In 2017, KB Bakewell submitted applications to City regarding its proposal for development of a project known as Campus Town on an approximately 122-acre site located on the former Ford Ord military base. On February 26, 2018, City issued a notice of preparation of an EIR for the Campus Town specific plan. After holding a public

2

hearing on March 5, 2020, the city council voted to certify the EIR and approve the Campus Town specific plan.

On March 6, 2020, City issued a notice of determination (NOD) for the Campus Town specific plan, which stated that an EIR had been prepared for the project pursuant to CEQA and the project had been approved by City. The NOD described the Campus Town project as "a Mixed-Use Urban Village to serve residents, visitors, and University Students. Build-out includes up to: 1,485 housing units, 250 hotel rooms, 75 hostel beds, 150,000 sf retail/dining/entertainment, 50,000 sf office/flex/makerspace, and park/recreation areas."

On April 5, 2020, the Committee submitted written requests to the Fort Ord Reuse Authority (FORA) to (1) receive prior written notice of City submitting a request to FORA to determine the consistency of the Campus Town specific plan with the Fort Ord Reuse Plan; and (2) receive prior written notice of a public hearing to determine the consistency of the Campus Town specific plan with the Fort Ord Reuse Plan. The Committee did not receive either of the requested notices. After holding a public hearing on June 6, 2020, FORA determined that the Campus Town project was consistent with the Fort Ord Reuse Plan, as stated in Resolution No. 20-10.

## III.  PROCEDURAL BACKGROUND

### A.  *The First Writ Petition*

On April 6, 2020, the Committee filed a petition for writ of mandate challenging the City's approval of the Campus Town project and FORA's determination that the Campus Town project is consistent with the Fort Ord Reuse Plan.  (Super. Ct. Monterey County, No. 20CV001203.)  The Committee named City as respondent and KB Bakewell as real party in interest.

The writ petition included 10 causes of action alleging that the EIR for the Campus Town project was deficient in its analysis of the environmental impacts of the project and violated CEQA in many respects.  The Committee sought a writ commanding

3

City to, among other things, set aside its certification of the EIR and its approvals of the Campus Town project.

The Committee subsequently filed a request for dismissal of the writ petition without prejudice, which was entered as requested on August 4, 2020.

## B. *The Second Writ Petition*

The Committee filed a second petition for writ of mandate regarding the Campus Town specific plan on September 1, 2020, again naming City as respondent and KB Bakewell as real party in interest, and adding FORA as respondent. The second petition for writ of mandate (hereafter, writ petition) is the subject of this appeal.

The writ petition includes 11 causes of action that again alleged that the EIR for the Campus Town project was deficient in its analysis of the environmental impacts of the project and violated CEQA in many respects. In addition, the writ petition included a 12th cause of action for violation of the constitutional right to due process, alleging that FORA had failed to provide either prior written notice of City submitting a request to FORA to determine the consistency of the Campus Town specific plan with the Fort Ord Reuse Plan or prior written notice of a public hearing to determine the consistency of the Campus Town specific plan with the Fort Ord Reuse Plan.[2]

In the petition, the Committee again sought a writ of mandate commanding City to, among other things, set aside its certification of the EIR and its approvals of the Campus Town project. The Committee also sought a writ of mandate commanding FORA " or its successor in interest to set aside that certain determination that the Campus Town project is consistent with the Fort Ord Reuse Plan."

---

[2] The Committee's "countermotion for severance" asking this court to sever the 12th cause of action for purposes of appeal pursuant to section 21167.1, subdivision (c) is denied in the interests of judicial economy.

4

**C.** *KB Bakewell's Demurrer*

In its demurrer, KB Bakewell contended that the 11 causes of action in the writ petition alleging violations of CEQA were time-barred under the 30-day limitations period provided by section 21167, subdivision (c) for an action alleging that an EIR does not comply with CEQA, as extended by the tolling period provided by Emergency rule 9.

According to KB Bakewell, under section 21167, subdivision (c) the 30-day limitations period began to run on March 6, 2020, the date that City posted the NOD for the Campus Town project. KB Bakewell further asserted that Emergency rule 9[3] tolled the 30-day limitations period from April 6, 2020, to August 3, 2020, with the result that August 4, 2020, was the last day for the Committee to timely file its writ petition alleging that the EIR for the Campus Town project violated CEQA. Since the writ petition was not filed until September 1, 2020, City maintained that the 11 causes of action in the writ petition alleging violations of CEQA were all time-barred.

Regarding the 12th cause of action for violation of the constitutional right to due process, KB Bakewell argued that the cause of action was moot because FORA has ceased to exist. KB Bakewell pointed out that FORA was dissolved by operation of law on June 30, 2020, pursuant to former Government Code section 67700, subdivision (a). Therefore, FORA no longer determines the consistency of development projects with the Fort Ord Reuse Plan as previously required under former Government Code section 67675.8.

KB Bakewell argued that since a consistency determination by FORA is not required due to FORA's dissolution, any failure to provide proper notice of FORA's

---

[3] As we will further discuss, the Judicial Council adopted Emergency rule 9, effective May 29, 2020, which provides: "Tolling statutes of limitations for civil causes of action [¶] Tolling statutes of limitations of 180 days or less [¶] Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that are 180 days or less are tolled from April 6, 2020, until August 3, 2020." (Cal. Rules of Court, appen. 1, Emergency rule 9(b).)

consistency determination for the Campus Town project did not constitute a violation of due process. Finally, KB Bakewell argued that the relief requested by the Committee could not be provided, since FORA has been dissolved and a remand to FORA for further action regarding the consistency of the Campus Town project with the Fort Ord Reuse Plan is not possible.

### D. *Opposition to KB Bakewell's Demurrer*

The Committee opposed KB Bakewell's demurrer on both grounds. Regarding the contention that the 11 CEQA causes of action in the writ petition were time-barred, the Committee argued that Emergency rule 9, as amended, constituted an improper ex post facto law that should not be applied to cut off its CEQA claims. The Committee noted that the original version of Emergency rule 9, adopted by the Judicial Council on April 6, 2020, tolled the statute of limitations in civil cases until 90 days after Governor Gavin Newsom lifts the state of emergency relating to the Covid-19 pandemic that the Governor had declared on March 4, 2020.

According to the Committee, its counsel relied on the original version of Emergency rule 9 to provide an open-ended time to file the Committee's writ petition. The Committee further asserted that its counsel was unaware that the Judicial Council had adopted an amendment to Emergency rule 9 on May 22, 2020, that ended the tolling period on August 3, 2020, for the statute of limitations applicable to an action alleging that the EIR violated CEQA.

Describing the amended Emergency rule 9 as a severe "truncation" of the tolling period, the Committee argued that it did not have a reasonable time to file its writ petition because there was only a two-month period from the effective date of the amended Emergency rule 9 on May 29, 2020, and the end of the tolling period on August 3, 2020. The Committee urged that its alleged lateness in filing the writ petition on September 1, 2020, during a pandemic should be excused under these circumstances.

6

As to the 12th cause of action for violation of the constitutional right to due process, the Committee argued that the demurrer could not be sustained on the ground of mootness because the Fort Ord transition plan provides that City is the successor in interest to FORA's obligations. The Committee also argued that the unavailability of the remedy requested in the prayer of the writ petition is not a ground for a demurrer because a demurrer challenges only the sufficiency of the allegations in the cause of action.

### E. *City's Demurrer*

City filed a demurrer to the writ petition, contending that the writ petition was barred under the sham pleading doctrine and should be dismissed under the defense of laches. According to City, the writ petition was a sham because it was filed to circumvent the procedural deficiencies of the first writ petition. Specifically, City asserted that, as shown by the exhibits in its accompanying request for judicial notice, the first writ petition was subject to mandatory dismissal because the Committee had failed to request a hearing on the writ petition within 90 days of filing the petition, as required by section 21167.4, subdivision (a).[4] Additionally, City argued that by refiling the writ petition the Committee had unreasonably delayed this CEQA litigation in contravention of the expedited hearing and briefing schedules provided for CEQA cases by section 21167.4.

In opposition to City's demurrer, the Committee contended that the second writ petition did not constitute a sham pleading because it did not attempt to cure any defect in the first petition by omitting certain allegations. As to the defense of laches, the Committee argued that it was not precluded from filing a new writ petition and requesting

---

[4] Section 21167.4, subdivision (a) provides: "In any action or proceeding alleging noncompliance with this division, the petitioner shall request a hearing within 90 days from the date of filing the petition or shall be subject to dismissal on the court's own motion or on the motion of any party interested in the action or proceeding. (§ 21167.4, subd. (a).)

a hearing within 90 days from the date of the new filing. It disputed City's contention that the first writ petition was subject to mandatory dismissal.

## F. *The Trial Court's Order and Judgment*

In its February 17, 2021 order, the trial court sustained the demurrers of KB Bakewell and City without leave to amend.

### 1. Ruling on KB Bakewell's Demurrer

The trial court ruled that the 11 CEQA causes of action in the Committee's writ petition were time-barred under the 30-day limitations period provided by section 21167, subdivision (c), as tolled under amended Emergency rule 9.

In so ruling, the court determined that the 30-day limitations period for the Committee's CEQA causes of action began to run on March 6, 2020, when the NOD for the Campus Town project was posted. The court further determined that the 30-day period to file the CEQA action would have expired on April 6, 2020, but for the tolling provision in Emergency rule 9 that tolled the limitations period to August 3, 2020. On that basis, the court determined that the limitations period for the Committee's CEQA action ended one day later, on August 4, 2020, and ruled that the September 1, 2020 writ petition was untimely filed as to the CEQA causes of action. The court rejected the Committee's contention that it did not have a reasonable time to file its writ petition; the court concluded that the Committee had over two months to file its writ petition, from the May 29, 2020, amendment of Emergency rule 9 until August 4, 2020, which was twice the statutory limitations period of 30 days.

The trial court also determined that the 12th cause of action for violation of the constitutional right to due process was moot for three reasons: (1) FORA ceased to exist as of June 30, 2020, pursuant to former Government Code section 67700; (2) the Committee failed to point to anything in the judicially noticed Fort Order transition plan that "places upon the City of Seaside any obligation to resolve purported deficiencies in the notice provided for consistency obligations in the FORA Reuse Plan that occurred

8

before FORA dissolved" (italics omitted); and (3) the legislation requiring notice of FORA's consistency hearings had been repealed. The trial court concluded that there was no person or entity against whom relief could be granted and therefore the 12th cause of action was moot.

### 2. Ruling on City's Demurrer

The trial court also ruled that the writ petition failed to state facts sufficient for a cause action under the sham pleading doctrine. Since the record showed that the first writ petition would have been dismissed because the Committee did not request a hearing within 90 days as required by section 21167.4, subdivision (a), the court determined that the Committee had filed the instant writ petition to circumvent the mandatory dismissal. However, the court rejected City's contention that the writ petition was barred under the defense of laches because the face of the writ petition did not show unreasonable delay, prejudice, or acquiescence.

Finally, the trial court determined that the defects in the writ petition could not be cured by amendment and denied leave to amend. The March 19, 2021 judgment dismissed the writ petition with prejudice.

### IV. DISCUSSION

On appeal, the Committee argues that the trial court erred in sustaining the demurrers on the grounds that the CEQA causes of action in the writ petition were time-barred, the writ petition constitutes a sham pleading, and the 12th cause of action was moot.

As the issue of whether the CEQA claims were time-barred is dispositive of the CEQA causes of action, we begin our evaluation of the Committee's contentions with the standard of review and an overview of the statutes of limitation applicable to CEQA claims.

9

## A. *Standard of Review*

A respondent may test the legal sufficiency of a petition for writ of mandate by demurrer. (*May v. City of Milpitas* (2013) 217 Cal.App.4th 1307, 1323.) On appeal from an order of dismissal after a demurrer is sustained without leave to amend, our review is de novo. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 (*Committee for Green Foothills*).) In performing our independent review of the complaint, we assume the truth of all facts properly pleaded by the plaintiff. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 (*Evans*).)

Further, "we give the complaint a reasonable interpretation, and read it in context." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) But we do not assume the truth of " ' "contentions, deductions or conclusions of fact or law." ' " (*Evans*, *supra*, 38 Cal.4th at p. 6.) We also consider matters that may be judicially noticed and facts appearing in any exhibits attached to the complaint. (Code Civ. Proc, § 430.30, subd. (a); *Schifando*, at p. 1081; *Blank*, *supra*, 39 Cal.3d at p. 318.)

However, " ' "[a] demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint [and matters subject to judicial notice]; it is not enough that the complaint shows that the action may be barred." ' " (*Committee for Green Foothills, supra,* 48 Cal.4th at p. 42; see Code Civ. Proc, § 430.30, subd. (a).)

## B. *Statute of Limitations*

### 1. Applicable CEQA Statute of Limitations

CEQA "provides 'unusually short' limitations periods (Cal. Code Regs., tit. 14, §§ 15000 et seq. (CEQA Guidelines), 15112, subd. (a)) after which persons may no longer mount legal challenges, however meritorious, to actions taken under the Act's auspices." (*Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 488 (*Stockton Citizens*).) "Most limitation statutes are triggered by the filing of a

public notice, which reports an agency's determination about the applicability of CEQA or the potential environmental impact of a project. (§§ 21108, 21152.)" (*Committee for Green Foothills*, *supra*, 48 Cal.4th at pp. 38–39.)

Relevant here, "[i]f a state or local agency has filed an NOD stating whether a project will have a significant environmental impact (see §§ 21108, subd. (a), 21152, subd. (a)), the statute of limitations for all types of CEQA claims related to the project is 30 days from the date the notice was filed. The 30-day statute applies to . . . claims challenging the adequacy of an EIR (§ 21167, subd. (c))."[5] (*Committee for Green Foothills*, *supra,* 48 Cal.4th at p. 47, italics omitted; see also *Stockton Citizens*, *supra,* 48 Cal.4th at p. 500 [same].)

Our Supreme Court has also stated that "[a] bright-line rule that the filing of an NOD triggers a 30-day statute of limitations promotes certainty, allowing local governments and developers to proceed with projects without the threat of potential future litigation. (Cf. § 21167.2 [after expiration of the 30-day period in § 21167, subd. (c), an EIR is conclusively presumed to be valid]." (*Committee for Green Foothills*, *supra*, 48 Cal.4th at p. 50.) Thus, the posting of an NOD "alerts the public that any lawsuit to attack the noticed action or decision on grounds it did not comply with CEQA must be mounted immediately." (*Stockton Citizens, supra*, 48 Cal.4th at p. 488.)

**2. Tolling of the Statute of Limitations Under Emergency Rule 9**

As discussed in *E.P. v. Superior Court* (2020) 59 Cal.App.5th 52 (*E.P.*), the Judicial Council's adoption of emergency rules in 2020, including Emergency rule 9, followed the Governor's declaration of a state of emergency: "On March 4, 2020,

---

[5] Section 21167, subdivision (c) provides: "An action or proceeding alleging that an environmental impact report does not comply with this division shall be commenced within 30 days from the date of the filing of the notice required by subdivision (a) of [s]ection 21108 [notice of determination by state agency] or subdivision (a) of [s]ection 21152 by the lead agency [notice of determination by local agency]." (§ 21167, subd. (c).)

11

Governor Gavin Newsom declared a state of emergency as a result of the threat of COVID-19, and on March 19, 2020, issued an executive order directing all Californians not providing essential services to stay home. [Citation.] The order did not close the courts, which provide an essential service." (*E.P.*, at pp. 54–55, fn. omitted.)

Thereafter, "[o]n March 27, 2020, the Governor issued Executive Order N-38-20, which 'suspended any limitations in Government Code section 68115 or any other provision of law that limited the Judicial Council's ability to issue emergency orders or rules, and suspended statutes that may be inconsistent with rules the Judicial Council may adopt.' [Citation.] [¶] Acting on that authority, on April 6, 2020, the Judicial Council adopted 11 emergency rules." (*E.P.*, *supra*, 59 Cal.App.5th at p. 55.)

As originally adopted on April 6, 2020, Emergency rule 9 tolled all statutes of limitation for civil causes of action until 90 days after the Governor declared that the state of emergency related to the COVID-19 pandemic is lifted. (See Circulating Order to the Judicial Council, Number CO-20-09, dated May 22, 2020, p. 3 (Circulating Order).)[6] The Judicial Council subsequently received comments regarding the impact of Emergency rule 9 on CEQA actions, as stated in the Circulating Order: "Shortly after adoption of the rule, the Judicial Council began receiving comments that raised issues concerning the application of the amended rule to actions brought under [CEQA], which has particularly short deadlines, generally 30 or 35 days." (Circulating Order, at p. 3)

Thereafter, the Judicial Council amended Emergency rule 9 by adopting, among other things, subdivision (b), effective May 29, 2020, as follows: "Tolling statutes of limitations for civil causes of action [¶] . . . [¶] (b) Tolling statutes of limitations of 180 days or less [¶] Notwithstanding any other law, the statutes of limitations and repose for

_____

[6] On our own motion we take judicial notice of Circulating Order to the Judicial Council Number CO-20-09, dated May 22, 2020, as an official act taken in response to the pandemic. (Evid. Code, §§ 459, 452, subd. (c); see *E.P.*, *supra*, 59 Cal.App.5th at p. 55, fn. 5.)

12

civil causes of action that are 180 days or less are tolled from April 6, 2020, until August 3, 2020." (Cal. Rules of Court, appen. 1, Emergency rule 9.)

The Advisory Committee comment on Emergency rule 9 states that "Emergency rule 9 is intended to apply broadly to toll any statute of limitations on the filing of a pleading in court asserting a civil cause of action. The term 'civil causes of action' includes special proceedings. (See Code Civ. Proc., §§ 312, 363 ['action,' as used in title 2 of the code (Of the Time of Commencing Civil Actions), is construed 'as including a special proceeding of a civil nature']; special proceedings of a civil nature include all proceedings in title 3 of the code, including mandamus actions under [Code Civ. Proc.,] §§ 1085, 1088.5, and 1094.5—all the types of petitions for writ made for [CEQA] and land use challenges]; see also [§] 21167(a)-(e) [setting limitations periods for civil 'action[s]' under CEQA].) (Advisory Com. Com., Cal. Rules of Court, appen. I, Emergency rule 9.)

### 3. The Parties' Contentions

The Committee contends that the trial court erred in ruling that the 11 CEQA causes of action were time-barred because the shortened limitations period provided by Emergency rule 9(b) was unreasonable and arbitrary, constitutes an improper ex post facto law that cut off the Committee's access to courts, and the Judicial Council's choice of August 3, 2020, as the end of the tolling period was improperly influenced by lobbyists.[7]

---

[7] The Committee's request for judicial notice is granted as to exhibit B, California Rules of Court Appendix I, Emergency rule 9, adopted April 6, 2020; exhibit C, California Rules of Court, Appendix I, Emergency rule 9, amended May 29, 2020; exhibit D, Judicial Council Circulating Order No. CO-20-09; and exhibit E, The Fort Ord Reuse Authority's Master Resolution document, http://www.fora.org/Reports/MasterResolution.pdf [as of May 5, 2022], archived at: <https://perma.cc/2ENC-LVD6>. (Evid. Code, § 452, subds. (c), (d), (e)(1).) The request for judicial notice is denied as to all other exhibits since the records of other states and the Centers for Disease Control and Prevention are not relevant. (See *People ex rel.*

According to the Committee, the unreasonableness of Emergency rule 9(b) is shown by the court rules of several other states that provided a lengthier tolling period during the pandemic. The Committee also argues that because its counsel was unaware that Emergency rule 9 was amended on May 29, 2020, to effectively "truncate" the time to file its writ petition to August 4, 2020, counsel unknowingly dismissed the first writ petition on August 4, 2020, in the midst of the pandemic.

The City and KB Bakewell respond in their joint briefing that the CEQA causes of the action are time-barred because the Committee did not file its writ petition until September 1, 2020, after the limitations period expired on August 4, 2020, pursuant to Emergency rule 9(b). They disagree that Emergency rule 9(b) provided an unreasonably short time for the Committee to file its writ petition, explaining that after the Judicial Council announced its intent to amend Emergency rule 9 on May 22, 2020, the Committee had 75 days—two and one-half times the statutory 30-day period mandated by CEQA—to file before the limitations period expired on August 4, 2020. Further, they argue that the Committee's counsel cannot be excused from untimely filing the writ petition, contending no relief is available for failure to file within the statute of limitations.

### 4. Analysis

This court has stated that "appellate courts conduct a de novo review of interpretations of relevant California Rules of Court." (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 81.) We independently determine, as stated in *People v. Financial Casualty & Surety, Inc*. (2021) 73 Cal.App.5th 33, 42, that "[t]he plainly intended meaning of Emergency rule 9 is that statutes of limitation and repose for pleadings commencing civil causes of action . . . are temporarily tolled."

*Lockyer v. Shamrock Foods Co*. (2000) 24 Cal.4th 415, 422, fn. 2 ["any matter to be judicially noticed must be relevant to a material issue"].)

14

"A tolling provision suspends the running of a limitations period."  (*Shalabi v. City of Fontana* (2021) 11 Cal.5th 842, 845.)  In other words, "the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded.  As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred."  (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370–371.)

Accordingly, we determine that Emergency rule 9(b), as amended May 29, 2020, applies to the 30-day statute of limitations (§ 21167, subd (c)) that is applicable to the CEQA causes of action in the instant writ petition, such that the limitations period was tolled from April 6, 2020, to August 3, 2020.  As the parties agree on appeal, under Emergency rule 9(b) the last day for the Committee to file its writ petition asserting CEQA causes of action was August 4, 2020.  Since the writ petition was not filed until September 1, 2020, we conclude that the writ petition was untimely filed as to the CEQA causes of action pursuant to section 21167, subdivision (c), as tolled under Emergency rule 9(b).

We are not convinced by the Committee's argument that it did not have a reasonable time to file its writ petition due to amended Emergency rule 9(b)'s "truncation" of the limitations period for its CEQA causes of action.  Our Supreme Court long ago set forth the general rule that "where the change in remedy, as, for example, the shortening of a time limit provision, is made retroactive, there must be a reasonable time permitted for the party affected to avail himself [or herself] of his [or her] remedy before the statute takes effect.  If the statute operates immediately to cut off the existing remedy, or within so short a time as to give the party no reasonable opportunity to exercise his [or her] remedy, then the retroactive application of it is unconstitutional as to such party."  (*Rosefield Packing Co. v. Superior Court* (1935) 4 Cal.2d 120, 122–123 (*Rosefield*).)

15

Thus, as this court has observed, "[w]ell settled law, . . . establishes that retrospective application of a shortened limitations period is permissible provided the party has a reasonable time to avail himself [or herself] of his [or her] remedy before the statute cuts off his [or her] right." (*Aronson v. Superior Court* (1987) 191 Cal.App.3d 294, 297.) "[T]he issue of reasonable time is not committed to the trial court's discretion, . . . the matter is a question of law." (*Id.* at pp. 297–298.)

Here, it is apparent from the face of the writ petition and matters subject to judicial notice that the Committee's remedy—the filing of a writ petition to challenge the City's certification of the EIR and approval of the Campus Town specific plan—was not cut off by the May 29, 2020 amendment to Emergency rule 9. Under section 21167, subdivision (c), the Committee had 30 days from the posting of the NOD on March 6, 2020, to file its writ petition. The 30-day limitations period would have ended on April 6, 2020, but for Emergency rule 9(b).

Emergency rule 9, as originally adopted on April 6, 2020, provided that the limitations period for statutes of limitation of 180 days or less would not end until 90 days after the Governor lifted the pandemic state of emergency. However, as we have discussed, the Judicial Council amended Emergency Rule 9(b), effective May 29, 2020, to end the tolling period on August 3, 2020, in part because the Judicial Council recognized the open-ended tolling period was contrary to the very short limitations periods, such as section 21167, subdivision (c), that the Legislature had enacted with respect to CEQA actions.

The Emergency rule 9(b) tolling period therefore applied in the present case to provide the Committee with an additional two months (that is, from April 6, 2020, to August 4, 2020), to file its writ petition alleging violations of CEQA. Since, as the trial court noted, a two-month extension of the limitations period is twice the 30-day limitations period that would have applied in this case absent tolling, we determine as a matter of law that the Committee's remedy was not cut off. Nor was the Committee

16

deprived of a reasonable time to file the writ petition. (See *Rosefield*, *supra*, 4 Cal.2d at pp. 122–123.) Accordingly, we conclude that the writ petition was untimely filed as to the 11 CEQA causes of action, which are time-barred. The Committee's contention that Emergency rule 9(b) constitutes an unconstitutional ex post facto law that cut off the Committee's access to courts does not cause us to alter our conclusion. "Ex post facto concerns do not apply to civil statutes of limitation." (*Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 180, fn. 4.)

Having reached this conclusion based on the face of the writ petition and the matters subject to judicial notice, we need not address the trial court's ruling with respect to the sham pleading doctrine or the reasonableness of the pandemic tolling provisions adopted in other states. (See *Committee for Green Foothills*, *supra*, 48 Cal.4th at p. 42.)

## C. *Mootness*

The Committee contends that the trial court erred in sustaining the demurrer to the 12th cause of action for violation of the constitutional right to due process on the ground that the cause of action alleging that FORA failed to provide the notice of FORA's Campus Town consistency hearing is moot because FORA has been dissolved. Our review of this contention is guided by the general principles underlying the mootness doctrine.

" 'It is well settled that an appellate court will decide only actual controversies and that a live appeal may be rendered moot by events occurring after the notice of appeal was filed. We will not render opinions on moot questions or abstract propositions, or declare principles of law which cannot affect the matter at issue on appeal.' " (*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 866.) "A case is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief.' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214 (*MHC*).)

17

"Stated differently, moot cases 'are "[t]hose in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist." '" (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 722.) "The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief." (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App4th 1559, 1574.)

Here, the Committee argues that the 12th cause of action for violation of due process is not moot because City is the successor in interest to FORA's obligations, as set forth in the Fort Ord transition plan, and as such City is liable for FORA's obligations under the Fort Ord Reuse Plan.[8]  The Committee also argues that a remedy for its due process claim is available, follows:  "As the successor, the City should be charged with reviewing what FORA did with regards to noticing and conducting its consistency hearing, and, if FORA acted inappropriately, to see that the hearing is renoticed and conducted properly."

City responds that the 12th cause of action is moot in light of the change of law dissolving FORA and repealing the statutory requirement that FORA determine the consistency of development projects with the Fort Order Reuse Plan.  We agree.

In *City of Marina v. Board of Trustees of California State University* (2006) 39 Cal.4th 341 our Supreme Court described the rules that governed the development of the Ford Ord property in 2006:  "Fort Ord is a former United States Army base on the Pacific Coast, about five miles north of Monterey and 125 miles south of San Francisco.  . . .  In

---

[8] Former Government Code section 67700, subdivision (b)(2) provided for the Fort Ord transition plan:  "The board shall approve and submit a transition plan to the Monterey County Local Agency Formation Commission on or before December 30, 2018, or 18 months before the anticipated inoperability of this title pursuant to subdivision (a), whichever occurs first.  The transition plan shall assign assets and liabilities, designate responsible successor agencies, and provide a schedule of remaining obligations."  (Former Gov. Code, § 67700, subd. (b)(2).)

18

1994, the Department of Defense formally closed the base and transferred 27,000 acres (over 42 square miles) to a variety of governmental entities and local organizations. . . . [¶] To provide a government for the former base and to manage its transition to civilian use, the Legislature enacted the Fort Ord Reuse Authority Act ([former] Gov. Code, § 67650 et seq.) (hereafter the FORA Act or the act). Effective May 9, 1994, the act authorized FORA's creation and conferred upon it governmental powers and duties within the former base that prevail over those of any other local governmental entity. (*Id.*, [former] Gov. Code § 67657, subd. (c).) FORA's general statutory purpose is 'to plan for, finance, and carry out the transfer and reuse of the base in a cooperative, coordinated, balanced, and decisive manner.' ([former] Gov. Code, § 67652, subd. (a). . . . [¶] The charter for Fort Ord's future use and development is the statutorily mandated Base Reuse Plan . . . , which FORA adopted on June 13, 1997. (See [former] Gov. Code, § 67675 et seq.) The plan addresses land use, transportation, conservation, recreation and capital improvement in Fort Ord until the year 2015. (See *id.*, [former] § 67675, subd. (c).)" (*Id.* at p. 346.)

Former Government Code section 67700, subdivision (a) provided by its own terms that FORA would dissolve by operation of law: "This title [7.85, FORA] shall become inoperative when the board determines that 80 percent of the territory of Fort Ord that is designated for development or reuse in the plan prepared pursuant to this title has been developed or reused in a manner consistent with the plan adopted or revised pursuant to Section 67675, or June 30, 2020, whichever occurs first, and on January 1, 2021, this title is repealed." (Former Gov. Code, § 67700, subd. (a).)

Thus, the statutory scheme authorizing FORA to govern the development of the former Fort Ord military base was repealed in its entirety on January 1, 2021. (Former Gov. Code, § 67700, subd. (a).) Included in the repeal was former Government Code section 67675.8, subdivision (b)(1) which had provided in part that "[n]otwithstanding any provision of law allowing any city or county to approve development projects, no

19

local agency shall permit, approve, or otherwise allow any development or other change of use within the area of the base that is not consistent with the [Fort Ord Reuse] plan as adopted or revised pursuant to [title 7.85]." (Former Gov. Code, § 67675.8, subd. (b)(1).)

The general rule is that "[i]n mandamus proceedings like this one, 'the law to be applied is that which is current at the time of judgment in the appellate court.' " (*Citizens for Positive Growth & Preservation v. City of Sacramento* (2019) 43 Cal.App.5th 609, 626 [contention that traffic analysis in EIR is inadequate is moot due to change in law eliminating requirement]; see also *Ocean Street Extension Neighborhood Assn. v. City of Santa Cruz* (2021) 73 Cal.App.5th 985, 1021 [same].)

In the present case, we accordingly determine that, due to the repeal of former section 67675.8, subdivision (b)(1), there is currently no requirement that development projects proposed for the former Fort Ord military base be consistent with the Fort Ord Reuse Plan. We therefore conclude that the Committee's contention that its right to due process was violated by FORA's failure to provide notice of the consistency hearing for the Campus Town project is moot.

The relief requested by the Committee—that City renotice and conduct a consistency hearing regarding the Campus Town project—cannot be granted due to the intervening change in law repealing the consistency requirement. For that reason, we conclude that no effectual relief can be provided for the alleged violation of due process with respect to the Campus Town consistency hearing, and therefore the 12th cause of action for violation of the constitutional right to due process is moot. (See *MHC*, *supra*, 106 Cal.App.4th at p. 214.)

**D.** *Leave to Amend*

Finally, the Committee contends that the trial court erred in denying leave to amend the writ petition. The Committee argues that it should be granted leave to amend to "expand its due process violation" claims and request "a declaratory judgment to the

20

effect that FORA (possibly in conjunction with the City) violated the Committee's due process rights."

In response, City maintains that leave to amend was properly denied by the trial court since there is no longer any statutory authority requiring FORA to make a consistency determination that would support a declaration that FORA failed to comply.

Where, as here, the trial court did not grant leave to amend, we review that ruling for abuse of discretion. (*Schifando*, *supra*, 31 Cal.4th at p. 1081.) "The plaintiff has the burden of proving that an amendment would cure the defect." (*Ibid*.)

We determine that the Committee has not met its burden to show that an amendment to the writ petition would cure the defect, such that declaratory relief would be available with regard to its due process claims.

" 'Any person . . . who desires a declaration of his rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action in the superior court . . . .' (Code Civ. Proc., § 1060.) Thus, declaratory relief is appropriate only where there is an actual controversy, not simply an abstract or academic dispute. [Citations.] For purposes of declaratory relief, an 'actual controversy' is one which '. . . "admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do." ' " (*Newland v. Kizer* (1989) 209 Cal.App.3d 647, 657.)

As we have discussed, FORA no longer exists, and there is no current statutory requirement for a determination of whether a development project is consistent with the Fort Ord Reuse Plan. (Former Gov. Code, § 67700, subd. (a).) For that reason, we determine there is no actual controversy in the present case with regard to FORA's determination that the Campus Town project is consistent with the Fort Ord Reuse Plan.

21

We therefore conclude that the trial court did not abuse its discretion in denying leave to amend the writ petition.

## IV.  DISPOSITION

The March 19, 2021 judgment of dismissal is affirmed.

_____
                     Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Grover, J.

**H049031**
*Committee for Sound Water & Land Development v. City of Seaside, et al.*

**CERTIFIED FOR PUBLICATION**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| COMMITTEE FOR SOUND WATER AND LAND DEVELOPMENT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br>CITY OF SEASIDE,<br><br>    Defendant and Respondent;<br><br>KB BAKEWELL SEASIDE VENTURE II, LLC,<br><br>    Real Party in Interest and Respondent. | H049031<br>(Monterey County<br>Super. Ct. No. 20CV002326) |

BY THE COURT:

The opinion in this case filed May 9, 2022, was not certified for publication. After the court's review of a request under California Rules of Court, rule 8.1120(a), and it appearing that the opinion meets the standards for publication under California Rules of Court, rules 8.1105(b) and 8.1110, it is therefore ordered that the opinion be published in the Official Reports.

1

_____

Danner, J.

_____

Bamattre-Manoukian, Acting P.J.

_____

Grover, J.

**H049031**
*Committee for Sound Water & Land Development v. City of Seaside, et al.*

2

| | |
|---|---|
| Trial Court: | Monterey County Superior Court No. 20CV002326 |
| Trial Judge: | Hon. Thomas W. Wills |
| Counsel for Plaintiff and Appellant: | Herum\Crabtree\Suntag<br>Steven A. Herum<br>Dana A. Suntag<br>Joshua J. Stevens |
| Counsel for Defendant and Respondent City of Seaside: | Office of the City Attorney<br>Shari L. Damon;<br>The Sohagi Law Group, PLC<br>R. Tyson Sohagi |
| Counsel for Real Party in Interest and Respondent KB Bakewell Seaside Venture II, LLC: | Cox Castle & Nicholson LLP<br>Andrew B. Sabey<br>Lisa M. Patricio<br>Robbie C. Hull;<br>Venable LLP<br>William M. Sloan |

**H049031**
*Committee for Sound Water & Land Development v. City of Seaside, et al.*

3