Filed 11/22/22 Save the Capitol, Save the Trees v. Dept. of General Services CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SAVE THE CAPITOL, SAVE THE TREES, | C095317 |
| Plaintiff and Appellant, | (Super. Ct. No. 34202180003674CUWMGDS) |
| v. | |
| DEPARTMENT OF GENERAL SERVICES, | |
| Defendant and Respondent; | |
| JOINT COMMITTEE ON RULES OF THE CALIFORNIA STATE SENATE AND ASSEMBLY et al., | |
| Real Parties in Interest and Respondents. | |

SUMMARY OF THE APPEAL

Appellant Save the Capitol, Save the Trees (STC) filed a petition for writ of mandate alleging that respondents the Joint Committee on Rules of the California State

1

Senate and Assembly (Joint Rules Committee) and the Department of General Service (DGS, with the Joint Rules Committee, the State parties) violated requirements of the California Environmental Quality Act (Pub. Resources Code, § 21000, et seq.; statutory section citations that follow are found in the Public Resources Code unless otherwise stated) (CEQA) when they entered into a memorandum of understanding (MOU) along with the Department of Finance (Finance) governing their joint relationship in overseeing the State Capitol Annex Project (Annex Project) without first engaging in a public CEQA review process and preparing an environmental impact report (EIR). The trial court granted the State parties' demurrer to the petition without leave to amend on the grounds that STC filed its petition after the 180 day filing period set forth in section 21167, subdivision (a) had passed. STC now appeals. We affirm the judgment.

### FACTS AND HISTORY OF THE PROCEEDINGS

The following summary is taken from the petition or consists of information of which this court may take judicial notice. (See *Save Lafayette Trees v. East Bay Regional Park Dist.* (2021) 66 Cal.App.5th 21, 29 ["On review of the order sustaining demurrers, we accept as true all properly pleaded material factual allegations and all materials subject to judicial notice"] (*Save Lafayette Trees*).)

"The State Capitol Building Annex is the annex to the historic State Capitol, constructed to the east of the original building . . . ." (Gov. Code, § 9105.) The existing annex was constructed between 1949 and 1951. Surrounding the Capitol and its annex is Capitol Park, which contains various monuments, memorials, walkways, and ornamental trees. The Capitol complex, consisting of the Capitol, its annex, and surrounding park, is a CEQA historic resource and is listed on the National Register of Historic Places.

In 2016, the Legislature enacted the State Capitol Building Annex Act of 2016 (Act), as set forth in Government Code sections 9112-9114.5. (Stats. 2016, ch. 31, § 65, amended by Stats. 2018, ch. 40, and further amended by Stats. 2022, ch. 48; § 18, et seq.)

2

The Act was passed to address various structural and operational deficiencies DGS had identified with the annex.

Under the Act, the Joint Rules Committee "may pursue the construction of a state capitol building annex or the restoration, rehabilitation, renovation, or reconstruction of the [existing] State Capitol Building Annex . . . and any other ancillary improvements." (Gov. Code, § 9112, subd. (a)(1).) Authorized projects, "may include a visitor center, a relocated and expanded underground parking facility, and any related or necessary deconstruction and infrastructure work." (Gov. Code, § 9112, subd. (a)(2).)

"All work performed pursuant to [the Act] shall be executed and managed by the Joint Rules Committee . . . . The Department of General Services shall provide counsel and advice to the Joint Rules Committee for purposes of the work. The work shall be undertaken pursuant to an agreement between the Joint Rules Committee, the Department of Finance or its designated representative, and the Department of General Services or its designated representative." (Gov. Code, § 9112, subd. (b)(1).) The agreement "shall establish the scope, budget, delivery method, and schedule for any work undertaken pursuant to [the Act]." (Gov. Code, § 9112, subd. (b)(2).)

Work approved or undertaken under the Act must comply with CEQA's requirements. (See Gov. Code, § 9112, subds. (c) & (d)(1).)

On November 9, 2018, the Joint Rules Committee, DGS, and Finance entered into the MOU to "pursue the construction of a new, restored, rehabilitated, renovated, or reconstructed capitol building annex and associated projects ('Annex Projects')." The trial court granted the State parties' unopposed request for judicial notice of the MOU.

The MOU specifies that DGS shall serve as the lead agency for the purposes of CEQA. In Attachment A, item 2.a., of the MOU, the scope of the project is described as consisting "of the design and construction, including any related studies, of a new, approximately 500,000 gross square foot State Capitol Building Annex. ¶ The Capitol Annex Project includes the upgrade or replacement of existing site infrastructure,

alterations to Capitol Park where necessary, alterations and improvements to the West Wing of the State Capitol where necessary, demolition of the current Annex and associated parking structure, and any other necessary ancillary improvements to construct a working Annex." The MOU contains a confidentiality clause that requires the parties to keep confidential "financial, statistical, personal, technical, and other data and information relating to the operations of each Party." The State entities adopted the MOU without first engaging in a public CEQA review process—i.e., without preparing an EIR and seeking public comment in formulating the scope of and in drafting the same.

After the State parties entered the MOU, on April 11, 2019, DGS issued a Notice of Preparation (NOP) to "Responsible Agencies, Interested Parties, and Organizations" stating its intention to prepare an EIR for the proposed annex project. The trial court granted the State parties' unopposed request for judicial notice of the NOP.

The project description stated the project would involve the demolition and reconstruction of the existing annex, construction of a new underground visitors' center, and replacement of existing annex basement parking with underground parking on the building's south side. The NOP set a 32-day period for public review and comment of the NOP, and invited agencies and individuals to participate in a scoping meeting on May 7, 2019.

In September 2019, DGS posted a draft EIR for the annex demolition project on its website. This was followed by a 45-day public comment period, and then the circulation of another draft in January 2020 with an attendant comment period. At the time STC filed its petition, DGS continued to make modifications to the project description.

In April 2021, DGS provided a copy of the MOU to an entity in response to a Public Records Act (Gov. Code, § 6250, et seq.). STC obtained a copy of the MOU and this was the first time STC learned about what it characterizes as the "pre-commitment

4

approval via the MOU" to proceed with demolition—as opposed to rehabilitation and/or renovation—of the existing annex.

STC filed its petition on July 9, 2021. STC alleges the MOU pre-committed the State parties to demolishing the existing annex and Capitol Park arboretum and to building a new annex, even though the Act allows them to accomplish the goal of fixing structural and operational deficits with the current annex through other means that do not require demolition, such as restoration, rehabilitation, or renovation.

STC argues that this alleged pre-commitment required the State parties to engage in a public review process under CEQA. Because the State parties entered the MOU without a public CEQA review process, including the preparation of an EIR that would address the "legislatively-mandated" alternatives, STC argues that the State parties violated CEQA.

By this proceeding, STC seeks a writ that would require the State entities to set aside the MOU and all subsequent approval actions relating to the Annex Project, and to remove any statements reflecting an alleged "pre-commitment" in the later-prepared project EIR, effectively undoing any decisions or work that flowed from the time of the entry of the MOU.

DISCUSSION

I

*Standard of Review*

"A demurrer tests the legal sufficiency of factual allegations in a complaint." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 42.) The standard of review on appeal from a dismissal after an order sustaining a demurrer is well established. "[W]e review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.]" (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.) We give the complaint a reasonable

5

interpretation, and treat the demurrer as admitting all material facts properly pleaded. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law. [Citation.]" (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) Legal questions that arise at the pleading stage include the interpretation of a statute or the application of a statutory provision to facts assumed to be true for purposes of the demurrer. (*Walker v. Allstate Indemnity Co.* (2000) 77 Cal.App.4th 750, 754.)

"In ruling on a demurrer, a court may consider facts of which it has taken judicial notice. (Code Civ. Proc., § 430.30, subd. (a).) This includes the existence of a document. When judicial notice is taken of a document, however, the truthfulness and proper interpretation of the document are disputable." (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 456, fn. 9.) "[W]e disregard . . . allegations contrary to those judicially noticed facts." (*May v. City of Milpitas* (2013) 217 Cal.App.4th 1307, 1329 (*May*).)

" ' "The defense of statute of limitations may be asserted by general demurrer if the complaint shows on its face that the statute bars the action." [Citations.]' (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1315 []; accord, *Lee v. Los Angeles County Metropolitan Transportation Authority* (2003) 107 Cal.App.4th 848, 854 [] [' "A general demurrer based on the statute of limitations is only permissible where the dates alleged in the complaint show that the action is barred by the statute of limitations" '].) ' "The ultimate question for review is whether the complaint showed on its face that the action was barred by a statute of limitations, for only then may a general demurrer be sustained and a judgment of dismissal be entered thereon." [Citation.]' (*E-Fab, Inc. v. Accountants, Inc. Services*, *supra*, at p. 1316.)" (*Van de Kamps Coalition v. Board of Trustees of Los Angeles Community College Dist.* (2012) 206 Cal.App.4th 1036, 1044 (*Van de Kamps*).) " 'A statute of limitations " 'necessarily fix[es]' a 'definite period[] of time' [citation], and hence operates conclusively across-the-board. It does so

6

with respect to all causes of action, both those that do not have merit and also those that do." ' " (*Citizens for a Green San Mateo v. San Mateo County Community College Dist.* (2014) 226 Cal.App.4th 1572, 1588, quoting *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 499.)

II

*CEQA Overview*

The California Legislature has declared that, in general, it is the policy of the state to, "[t]ake all action necessary to provide the people of this state with clean air and water, [and] enjoyment of aesthetic, natural, scenic, and historic environmental qualities . . . .[; and to] [¶ . . . ¶] [p]reserve for future generations representations of all plant and animal communities and examples of the major periods of California history." (§ 21001, subds. (b)-(c).)

In keeping with this recognition, the Legislature has also declared, "that it is the policy of the state that public agencies should not approve projects as proposed if there are feasible alternatives or feasible mitigation measures available which would substantially lessen the significant environmental effects of such projects." (§ 21002.)

CEQA requires "[a]ll lead agencies [to] prepare, or cause to be prepared by contract, and [to] certify the completion of, an environmental impact report on any project which they propose to carry out or approve that may have a significant effect on the environment." (§ 21100, subd. (a).) For purposes of CEQA, the definition of "project" includes an activity undertaken by a public agency "which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment." (§ 21065.) " ' "Significant effect on the environment" means a substantial, or potentially substantial, adverse change in the environment.' ([Pub. Resources Code, ]§ 21068; see CEQA Guidelines, § 15382.)" (*May*, *supra*, 217 Cal.App.4th at p. 1320.) "The purpose of an environmental impact report is to

7

provide public agencies and the public in general with detailed information about the effect which a proposed project is likely to have on the environment; to list ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project." (§ 21061.)

We note that California's CEQA regulations are contained in title 14 of the California Code of Regulations, section 15000 et seq. In some of the cases quoted herein the applicable sections are cited as "CEQA Guidelines" and in others they are cited as "Guidelines."

"CEQA lays out a three-stage process" for determining whether an EIR is required and for preparing one if it is required. (*Gentry v. City of Murrieta* (1995) 36 Cal.App.4th 1359, 1371 (*Gentry*).) "First, the agency must determine whether the particular activity is covered by CEQA. (Guidelines, § 15002, subd. (k)(1).) CEQA applies to any activity which is a 'project,' and which is not exempt." (*Gentry*, at p. 1371.) "Second, the agency must determine whether the project may have significant environmental effects. (Guidelines, § 15002, subd. (k)(2).)" (*Gentry*, at p. 1372.) Third, "[i]f the administrative record before the agency contains substantial evidence that the project may have a significant effect on the environment, it cannot adopt a negative declaration; it must go to on the third stage of the CEQA process: preparation and certification of an EIR. (§ 21100, 21151; Guidelines, § 15002, subd. (k)(3), 15063, subd. (b)(1), 15064, subds. (a)(1), (g)(1), 15362.)" (*Gentry*, at p. 1372.)

Though, on the one hand "[CEQA] seeks to ensure that public agencies will consider the environmental consequences of discretionary projects they propose to carry out or approve[, o]n the other hand, the Act is sensitive to the particular need for finality and certainty in land use planning decisions. Accordingly, the Act provides 'unusually short' limitations periods (Cal. Code Regs., tit. 14, §§ 15000 et seq. (CEQA Guidelines), 15112, subd. (a)) after which persons may no longer mount legal challenges, however meritorious, to actions taken under the Act's auspices. [¶] The shortest of all CEQA

8

statutes of limitations applies to cases in which agencies have given valid public notice, under CEQA, of their CEQA-relevant actions or decisions. The filing and posting of such a notice alerts the public that any lawsuit to attack the noticed action or decision on grounds it did not comply with CEQA must be mounted immediately." (*Stockton Citizens for Sensible Planning v. City of Stockton, supra,* 48 Cal.4th at p. 488, fn. omitted.)

By way of example, section 21167, subdivision (b), provides a 30-day statute of limitations to file an action challenging an agency's determination as to whether a project will have a significant environmental effect, and that statute of limitations is triggered when the agency files a notice of determination stating the agency has decided to approve a project for which it prepared an EIR. (See also § 21108, subd. (a).) The place for filing that notice of determination and some of the notice's contents are dictated by CEQA statutes. (See § 21108.)

In contrast, longer 180-day limits are provided when public notice has not been provided under a CEQA statute. (See §21167, subds. (a), (d).) For example, as relevant here, section 21167, subdivision (a), states that, "[a]n action or proceeding alleging that a public agency is carrying out or has approved a project that may have a significant effect on the environment without having determined whether the project may have a significant effect on the environment shall be commenced within 180 days from the date of the public agency's decision to carry out or approve the project, or, if a project is undertaken without a formal decision by the public agency, within 180 days from the date of commencement of the project." (§ 21167, subd. (a).)

"While CEQA's substantive provisions are interpreted broadly to implement the legislative intent of strong environmental protection, this 'does not mean that the same standard of liberality should necessarily be applied in interpreting the procedural requirements of [CEQA].' (*Board of Supervisors v. Superior Court*[ (1994)] 23 Cal.App.4th [830,] 836.) CEQA 'contains a number of provisions evidencing the

9

clear "legislative determination that the public interest is not served unless challenges under CEQA are filed promptly" . . . .' ([*Id.*] at p. 836.) '[T]here is legislative concern that CEQA challenges, with their obvious potential for financial prejudice and disruption, must not be permitted to drag on to the potential serious injury of the real party in interest.' (*Id.* at p. 837; see *San Franciscans for Reasonable Growth v. City and County of San Francisco* (1987) 189 Cal.App.3d 498, 504 [] ['the rationale of the statutory scheme is to avoid delay and achieve prompt resolution of CEQA claims'].) Where the law is clear, the strict CEQA time requirements must be applied as written. (*Board of Supervisors v. Superior Court*, *supra*, at p. 837.)" (*Van de Kamps*, *supra*, 206 Cal.App.4th at p. 1052.)

III

*This Action is Barred by Section 21167, Subdivision (a)*

Both parties treat the 180-day statute of limitations contained in section 21167, subdivision (a), as the applicable statute of limitations in this action. However, they disagree as to when the 180-day time period began to run for purposes of calculating when this action would become time-barred. The State parties argue that the statute of limitations ran 180 days after they entered into the MOU, or, at the latest when DGS published notice of preparation of the EIR. In contrast, STC argues that any statute-of-limitations defense the State parties might have invoked was defeated by the lack of public notice of the entry of the MOU. We agree with the State parties.

A.     The Statute of Limitations Began to Run when the State Parties and Finance Entered the MOU

According to the petition, the MOU commits the State parties to demolishing the existing annex and constructing a new one. The petition also alleges that STC's counsel had informed DGS that "approval of the . . . MOU in conjunction with related actions by DGS effected approval of the Annex project." It also alleges that the MOU was entered

10

into in November 2018. The petition was filed on July 9, 2021, roughly two and one-half years after the MOU was entered, well over 180 days after the November 2018 date petitioner alleges the MOU committed the parties to demolishing and rebuilding the annex. Under CEQA guidelines, " ' "Approval" means the decision by a public agency which *commits* the agency to a definite course of action in regard to a project intended to be carried out by any person.' " (*Save Tara v. City of West Hollywood* (2008) 45 Cal.4th 116, 129, quoting Guidelines, § 15352, subd. (a), italics added.) As the trial court concluded, based on the face of the petition, the action is barred by the statute of limitations contained in section 21167, subdivision (a), which is "180 days from the date of the public agency's decision to carry out or *approve* the project." (Italics omitted.)

STC argues that, the statute of limitations is only triggered by public notice of approval of a project, and that here there was no public notice of approval until April 2021, and, thus the earliest date the 180-day statute of limitations could have been triggered was in April 2021, making a July 2021 filing timely.

But, "section 21167 does not establish any special notice requirements for the commencement of the 180-day limitations period from project approval. '[A]ll that is required is that the public agency make a formal decision to "carry out or approve the project." ' (*Citizens for a Green San Mateo v. San Mateo County Community College Dist.*[*, supra,*] 226 Cal.App.4th [at p.] 1597 [].) '[CEQA] Guidelines define "approval" as "the decision by a public agency which commits the agency to a definite course of action in regard to a project intended to be carried out by any person." (Guidelines, §15352, subd. (a).) The Guidelines continue: "The exact date of approval of any project is a matter determined by each public agency according to its rules, regulations, and ordinances. . . . ." (*Ibid.*)' (*County of Amador v. El Dorado County Water Agency* (1999) 76 Cal.App.4th 931, 963 [].)" (*Save Lafayette Trees*, *supra*, 66 Cal.App.5th at pp. 40-41, fn. omitted.) We will not read section 21167, subdivision (a), to contain a requirement that public notice of an approval be provided before the statute of limitations

11

can begin to run. (See *Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 543 ["the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language"].)

In considering, and ultimately rejecting, STC's argument, the trial court relied heavily on the reasoning applied by our First District Court of Appeal in *Communities for a Better Environment v. Bay Area Air Quality Management District* (2016) 1 Cal.App.5th 715 (*CBE*).) We also find *CBE* informative.

In *CBE*, an LLC had been operating an ethanol rail-to-truck transloading facility since 2009. (*CBE, supra,* 1 Cal.App.5th at p. 719.) In February 2013, the LLC applied to the Bay Area Air Quality Management District (BAAQMD) for approval to alter its facility to transload Bakken crude oil. (*Ibid.*) The BAAQMD determined that the project was ministerial and not subject to CEQA review, and it issued a permit to the LLC in July 2013 without first issuing a notice of exemption that would have served as a public announcement of its determination that the project was exempt. (*Ibid.*) The LLC began transloading the crude oil in September 2013. (*Ibid.*)

The Communities for a Better Environment and other groups (CBE) filed a petition for writ of mandate against the BAAQMD and a complaint for declaratory relief and injunction against the LLC and its parent company in March 2014, alleging the approval was not ministerial and an EIR was required before the BAAQMD could approve the change. (*CBE, supra,* 1 Cal.App.5th at pp. 719-720.) The respondents sought to dismiss the action as time-barred under section 21167, subdivision (d), which provides that, "[a]n action or proceeding alleging that a public agency has improperly determined that a project is not subject to this division" because it is ministerial "shall be commenced within 35 days from the date of the filing by the public agency, or person specified in subdivision (b) or (c) of Section 21065, of the [notice of exemption]." If the notice has not been filed, the action or proceeding "shall be commenced within 180 days from the date of the public agency's decision to carry out or approve the project, or, if a

project is undertaken without a formal decision by the public agency, within 180 days from the date of commencement of the project." (*CBE*, *supra*, 1 Cal.App.5th at p. 720; see also, §§ 21167, 21080, subd. (b), 21108, subd. (b).)

In opposing the motion and challenging the trial court's dismissal on appeal, CBE argued that the trial court ought to have applied the discovery rule to find the statute of limitations did not begin to run until January 31, 2014, when one of its members first received an email alerting it that the LLC's facility had begun transloading crude oil. (*CBE*, *supra*, 1 Cal.App.5th at p. 720.) In so doing, "CBE maintained that it did not learn, and could not with reasonable diligence have learned, of the project any earlier, because BAAQMD '*gave the public no notice* of [the LLC]'s switch to . . . Bakken crude oil' and '[the LLC]'s transloading operation is entirely enclosed, making the transported commodity, and any change to it, invisible.' " (*Ibid.*, italics added.)

Ultimately, the court of appeal was not persuaded that the statute of limitations should be tolled to when CBE first learned of the project. (*CBE*, *supra*, 1 Cal.App.5th at p. 726.) It reasoned, "[g]iven the important role of public participation in the CEQA process (*Concerned Citizens*[ *of Costa Mesa, Inc. v. 32nd District Agricultural Association* (1986)] 42 Cal.3d [929,] 935-936[ (*Concerned Citizens*)), we acknowledge that if there were any situation in which it would be warranted to delay the triggering of a limitations period in the manner CBE urges, it would be one in which no public notice of the project was given and the project's commencement was not readily apparent to the public. As the case law establishes, however, we cannot read an exception for such circumstances into section 21167(d) without violating 'the Legislature's clear determination that " 'the public interest is not served unless CEQA challenges are promptly filed and diligently prosecuted.' " ' (*Stockton Citizens for Sensible Planning v. City of Stockton, supra,* 48 Cal.4th at p. 500.) Ultimately, CBE's arguments about the proper balance between the interests of public participation and of timely litigation are better directed to the Legislature, not this court." (*CBE*, *supra*, 1 Cal.App.5th at p. 726.)

STC attempts to distinguish *CBE* on the grounds that the case involved an action where the applicable statute of limitations was contained in section 21167, subdivision (d), and here we are dealing with an action where the applicable statute of limitations is contained in section 21167, subdivision (a). STC argues that subsection (a) applies a 180-day limit when an agency approves a project without taking any CEQA action, and subdivision (d) applies a 35-day limit when an agency files a discretionary notice of exemption and a 180-day limit if the agency chooses not to file a notice of exemption. STC then quotes from the *CBE* decision where the court notes the trial court "reasoned that the Legislature must have 'contemplate[d] circumstances where the public wouldn't know' about the decision to find a project exempt from CEQA, because the filing of an NOE is 'entirely optional' and section 21167(d) is not limited to situations 'where one by observation [can] tell that the [agency's] approval has been given' or that a project has commenced. Thus, the court found that CBE could not amend its pleading to avoid the statute of limitations by alleging that it was unaware of the project until January 2014." (*CBE*, *supra*, 1 Cal.App.5th at pp. 720-721.)

We fail to see how this description of subdivision (d) creates a meaningful distinction between the 180-day limit contained in it with the 180-day limit contained in subdivision (a). While in subdivision (d) the limit may be contained in a subsection that applies a different limit when a notice of exemption under CEQA is given, and in subdivision (a) the limit stands alone, in both instances it is equally likely that the Legislature contemplated instances in which public notice was not given of project approval. Importantly, the language stating the 180-day limit in the two subdivisions is identical, with both subdivisions stating actions "shall be commenced within 180 days from the date of the public agency's decision to carry out or approve the project, or, if a project is undertaken without a formal decision by the public agency, within 180 days from the date of commencement of the project." (See §21167, subds. (a) & (d).) "When the Legislature uses the same language in a related statute, we presume the Legislature

14

intended the language to have the same meaning. (*People v. Wells* (1996) 12 Cal.4th 979, 986 [].)" (*Garibotti v. Hinkle* (2015) 243 Cal.App.4th 470, 478.)

STC's argument ignores that, when viewed as a whole, section 21167 evinces that the Legislature considered that a lack of public notice might occur when it set statutes of limitations for a range of CEQA challenges, and the longer, 180-day limitation contained in subdivisions (a) and (d)—as opposed to the shorter 30- and 35-day limitations contained in other subdivisions—takes that possibility into account.

In *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 47 (*Committee for Green Foothills*), the court explained that the different limits contained in subdivision (d) "indicates that the determinative question, for purposes of defining the statute of limitations, is not what type of violation the plaintiff has alleged, but whether the action complained of was disclosed in a public notice. When an agency gives the public notice of its decision that a project is exempt from CEQA, just like a notice of any other determination under CEQA, the public can be expected to act promptly in challenging this decision. However, when an agency does not give the statutorily required notice, and the public is held to constructive notice based on the start of the project, the Legislature has determined that a longer limitations period should apply. [¶] The principle illustrated in subdivision (d) is evident *in all the other limitation periods set forth in section 21167.* If a state or local agency has filed an NOD stating whether a project will have a significant environmental impact (see §§ 21108, subd. (a), 21152, subd. (a)), the statute of limitations for all types of CEQA claims related to the project is 30 days from the date the notice was filed. The 30-day statute applies to claims challenging an agency's determination about environmental impact (§ 21167, subd. (b)), claims challenging the adequacy of an EIR (§ 21167, subd. (c)), and all other claims alleging CEQA violations (§ 21167, subd. (e)). If a state or local agency has made no environmental impact determination, the statute of limitations is 180 days, measured from the date of the agency's approval or the start of the project. (§ 21167, subd. (a).) *In*

15

*such cases, project approval or initiation is deemed constructive notice for potential CEQA Claims.*"  (Italics removed and added; accord *Save Lafayette Trees*, *supra*, 66 Cal.App.5th at p. 40.)

B.    The EIR Process Provided Constructive Notice

As an alternative basis for granting the demurrer, the State parties argue that even if approval of the MOU did not trigger the statute of limitations, STC had constructive notice of the MOU when DGS issued the NOP in April 2019.  We agree.

"Our Supreme Court has held that when an agency approves a project without filing either a notice of determination (NOD) as to whether a project will have a significant environment impact or [a notice of exemption (NOE)] as to whether a project is statutorily exempt from CEQA, section 21167 . . . 'permits a legal challenge to be brought up to 180 days after the agency's decision or commencement of the project,' which 'is deemed *constructive notice* for potential CEQA claims.'  (*Committee for Green Foothills*[, *supra,*] 48 Cal.4th [at p.] 47 [], italics added []; see *Stockton Citizens for Sensible Planning v. City of Stockton*[, *supra,*] 48 Cal.4th [at p.] 500 [] [accord].)"  (*Save Lafayette Trees*, *supra*, 66 Cal.App.5th at p. 40.)

Here, commencement of the work to be performed under the agreement required by Government Code section 9112, subdivision (b)—the MOU—became publicly apparent when DGS announced its intention to prepare an EIR in April 2019.  This provided STC with constructive notice that the State parties and Finance had entered into the MOU.  If we were to calculate the statute of limitations as 180 days from the date DGS issued the NOP, the deadline to file this action was October 8, 2019, 22 months before STC filed its action.

16

C.    Cases Running the Statute of Limitations in Section 21167 from Events other than the Approval or Commencement of the Project Do Not Require a Different Result.

STC's efforts to convince this court that the statute of limitations began to run when the MOU was released in response to a Public Records Act request are not persuasive.

First, STC states that the Act requires the State parties to comply with CEQA before approving a project or otherwise committing to which option it would exercise to bring the annex up to date—construction, restoration, rehabilitation, renovation, or reconstruction—and this compliance includes the preparation of an EIR. Then, STC takes the position that it had no reason to expect, nor was there public notice, that the MOU would pre-commit the State parties to destruction of the annex without CEQA review. Rather, STC claims that based on the Act, it had expected the required agreement between the State parties and Finance to use more general terms to describe the Annex project without committing to the form of project. It argues that public notice of the alleged violation—i.e., of the alleged deviation from STC's expectations—was not given until the MOU was provided in response to a Public Records Act in April 2021. In short, STC takes the position that since it did not expect a pre-commitment in violation of CEQA, and the State parties did not make a public statement indicating they made a pre-commitment when they adopted the MOU, the 180-day statute of limitations contained in section 21167, subdivision (a) was not triggered when the MOU was entered into or when DGS began the EIR process.

But section 21167 does not say the statute of limitations is triggered by public notice announcing the alleged violation has occurred, it is triggered by approval or commencement of a project. Once one of those two events takes place, a potential claimant has "constructive notice for *potential* CEQA claims," and the 180-day

17

limitations period is triggered. (*Committee for Green Foothills, supra,* 48 Cal.4th at p. 47, italics added; accord *Save Lafayette Trees*, *supra*, 66 Cal.App.5th at p. 41.) The potential claimant may not avoid the statutory time limitations simply by arguing they did not expect a violation to occur and thus did not perform due diligence once constructive notice of potential violations existed. To allow this argument to succeed would be in contravention of the legislative determination that the public interest is not served unless challenges under CEQA are filed promptly. (*Van de Kamps*, *supra*, 206 Cal.App.4th at p. 1052.)

STC cites *Concerned Citizens, supra,* 42 Cal.3d 929 and *Ventura Foothill Neighbors v. County of Ventura* (2014) 232 Cal.App.4th 429 (*Ventura*), to support its argument that lack of public notice of the MOU at the time it was approved defeats the State parties' argument that this action was barred by the statute of limitations in section 21167, subdivision (a).

In *Concerned Citizens*, *supra*, 42 Cal.3d at pages 933-934, petitioners filed an action alleging an agricultural district had violated CEQA when it made substantial changes to a theater construction project after the EIR for the project was filed and without notification to the public or the filing of a subsequent EIR addressing the changed plans. Petitioners filed their action just under 180 days from the date the first concert was performed at the theater, which was approximately 11 months after construction on the theater began, and just under four years after the district had entered into a contract for construction of the theater. (*Id.* at p. 933.) Petitioners alleged they had no actual or constructive notice of the changes to construction plans at the time construction commenced and could not have learned of them through reasonable diligence, because those changes were not made known at a public hearing. (See *id.* at p. 934.) The trial court sustained a demurrer to the action on the basis that the action was time-barred because it was not filed within 180 days of the commencement of construction of the theater, and the petitioners appealed. (*Ibid.*) Following a loss in the

18

court of appeal, the petitioners appealed to our Supreme Court and the Supreme Court reversed. (*Id.* at p. 940.)

The Court noted that if it were to apply the literal language of section 21167, subdivision (a)—setting the statute of limitations at 180 days from the day construction commenced—the action would be time-barred. (*Concerned Citizens*, *supra*, 42 Cal.3d at p. 937.) But the Court declined to apply the literal language, finding persuasive the petitioner's argument that to apply a literal interpretation of the statute in that case would be counter to CEQA's purpose of protecting the environment by allowing for public participation. (See *id.* at pp. 936 & 937.)

Is so doing, the court stressed the specific context in which the case arose: "Here, plaintiffs allege that the theater project was the subject of an EIR but that the actual project built differed substantially from the facility described in the EIR. The lack of public notice that the agency had authorized these substantial changes compromised the goal of public participation in the environmental review process. In fact, the agency's failure to prepare a supplemental or subsequent EIR effectively deprived the public of any meaningful assessment of the actual project chosen by the agency. [Citation.] *Indeed, the commencement of a project in these circumstances is more misleading than if the agency had prepared no EIR, since the public might justifiably but erroneously assume that the project being built is the one discussed in the EIR.* [Citation.] As a result, the public would fail to challenge the agency's noncompliance with CEQA within time limitations measured from commencement of construction." (*Concerned Citizens*, *supra*, 42 Cal.3d at p. 938, italics added.)

The court held, "if [an] agency makes substantial changes in a project after the filing of the EIR and fails to file a later EIR . . . an action challenging the agency's noncompliance with CEQA may be filed within 180 days of the time the plaintiff knew or reasonably should have known that the project under way differs substantially from the one described in the EIR." (*Concerned Citizens*, *supra*, 42 Cal.3d at p. 939.) In so doing,

the court observed that, generally, "[b]y providing in section 21167, subdivision (a) that the 180-day limitation period begins to run from the time a project is commenced, the Legislature determined that the initiation of the project provides constructive notice of a possible failure to comply with CEQA." (*Concerned Citizens,* at p. 939.)

The facts here differ from the facts in *Concerned Citizens* in one significant regard: while in *Concerned Citizens* the lack of a subsequent EIR describing changes in construction plans from those described in an initial EIR would have logically led citizens to assume there would be no significant changes to the original project, here the very language STC takes issue within the MOU is plainly in the document. The State parties took no action that would mislead the public into believing either (1) that the State parties would proceed in a manner that deviated from the terms of their MOU, or (2) that the State parties had not entered into an agreement as required under the Act. Thus, there is no reason to deviate from the requirements of section 21167, subdivision (a), which is based on the Legislature's general determination that the "initiation of the project provides constructive notice of a possible failure to comply with CEQA." (*Concerned Citizens*, *supra*, 42 Cal.3d at p. 939.)

In *Ventura*, *supra*, 232 Cal.App.4th at pages 431-432, the Board of Supervisors of Ventura County decided to build a clinic. A 1993 EIR for the project said the clinic would be up to 75 feet in height. (*Id.* at p. 432.) In 1994 the board certified the EIR and approved the project, but construction for the clinic was delayed until 2005. (*Ibid.*) The board decided to relocate the clinic, and that no subsequent or supplemental EIR was needed for the relocation, and instead prepared an addendum to the EIR, and the County filed a notice of determination on May 25, 2005, stating the project's location was changed. (*Ibid.*) In 2007, plans for the clinic were modified to show the building would be 90 feet tall, but the Ventura Foothill Neighbors (VFN) were not informed of the height change until May 22, 2008, when a local resident saw a rig at the site and went to the construction office to ask what they were building. (*Id.* at pp. 432-433.) VFN filed a

20

petition for writ of mandate in July 2008, which the trial court granted. (*Id.* at p. 433.) As part of its decision, the trial court ruled the action was not time-barred. (*Id.* at p. 434.) The county appealed. (*Id.* at p. 431.)

The county argued VFN needed to file their petition 30 days from May 25, 2005, based on section 21167, subdivision (e)'s, statute of limitations of 30 days to allege noncompliance of CEQA following a government entity's filing of a notice of determination. (*Ventura*, *supra*, 232 Cal.App.4th at p. 436.) The court of appeal disagreed, reasoning that, because neither the addendum to the EIR nor the notice of determination identified the change in the building's height, the applicable statute of limitations was the 180-day limit contained in section 21167, subdivision (a), and that had only begun to run when VFN was informed the building was going to be 90 feet high, on May 22, 2008. (*Ibid.*)

As with *Concerned Citizens*, the facts here are notably different than the facts in *Ventura*. As with *Concerned Citizens*, under the facts in *Ventura*, the public could have been misled by existing environmental review documents into believing a planned project would be constructed one way, when, in fact, the construction process was proceeding with different plans and without changes to the environmental review documents reflecting the different plans. In *Concerned Citizens* and *Ventura*, the court considered the specific facts and "preserved the Legislature's intent because it interpreted the statute in such a way that the statutory triggering date never actually transpired." (*CBE*, *supra*, 1 Cal.App.5th at p. 725; accord *Save Lafayette Trees*, *supra*, 66 Cal.App.5th at p. 42.) In both cases, the agencies made no changes to environmental review documents they had prepared as part of CEQA's mandate to inform the public of the proposed scope of the projects. In both cases, constructive notice of a change to the project at issue was not provided when construction begun, because when the projects commenced, the public could have easily been misled into believing they were commenced in accord with previously published environmental review documents. That is not what happened here.

21

At a minimum, once the EIR process began, STC had constructive notice of the existence of the MOU, and thus of a potential CEQA violation in the MOU.

*Defend Our Waterfront v. California State Lands Commission* (2015) 240 Cal.App.4th 570, 584-585 (*Defend Our Waterfront*) also provides no support for STC's argument that public notice of the contents of the MOU was required to trigger the statute of limitations. STC cites *Defend Our Waterfront* for the proposition that in some instances actual notice will not be sufficient to satisfy a statute's notice requirements. The portion of *Defend Our Waterfront* cited by STC was not concerned with what type of notice would trigger the statute of limitations contained in section 21167. (*Defend Our Waterfront*, *supra*, 240 Cal.App.4th at pp. 584-585.) Instead, the case addressed whether notice of a meeting satisfied specific statutory notice requirements when, if those requirements were not satisfied, a petitioner bringing a CEQA action could claim an exemption from certain exhaustion of administrative remedy requirements. (*Defend Our Waterfront*, *supra*, 240 Cal.App.4th at pp. 583-585; see also Gov. Code, § 11125, subd. (a).) This is very different from the issue here, where STC has not pointed to any statutory provisions that provide detailed requirements outlining a specific form of notice that would trigger the statute of limitations in section 21167, subdivision (a).

## DISPOSITION

We affirm the trial court's ruling and judgment.  Pursuant to California Rules of Court, rule 8.278(a)(1),  the State parties are awarded their costs on appeal.

_____
HULL, Acting P. J.

We concur:

_____
DUARTE, J.

_____
BOULWARE EURIE, J.